[Civ. No. 3525.   Second Appellate District, Division Two.—March 6, 1922.]

# J. L. BLODGETT, Appellant, v. GEORGE W. RHEIN-SCHILD et al., Respondents.

[1] USURY LAW—DIRECT LOAN — CHARGE OF "COMMISSION"—DEVICE TO AVOID LAW.—Where money was loaned directly by the lender to the borrower and there was no agent or intermediary in the transaction, the exaction of a greater sum for the loan than the maximum amount that a lender is entitled to ask or receive under the present usury law under the device of a "commission" for making the loan was a shift to circumvent and avoid such usury law.

[2] ID.—USURIOUS CONTRACT—INTEREST AFTER MATURITY—RECOVERY PROHIBITED.—Under the present usury law declaring that if the contract be usurious, no action at law to recover interest in any sum shall be maintained, the recovery of interest after as well as before maturity is barred.

[3] CHATTEL MORTGAGE—LOAN—BILL OF SALE AND CONTEMPORANEOUS LEASE—NATURE OF TRANSACTION.—Where a borrower, as security for a loan, executed to the lender a bill of sale of his automobile, and contemporaneously with such execution, and as a part of the same transaction, the parties executed an instrument in writing, in form a lease, which, after reciting, that the borrower as "lessee" had hired and received from the lender as "lessor" the automobile in question, for the term of six months, and after providing that the "lessee" should pay the "lessor" as rental for the hire of the automobile during the said term a stated sum in monthly payments, further provided that if the "lessee" should make the payments, he should have the right to repurchase the automobile by paying the "lessor" one dollar, the so-called lease was but a mortgage.

[4] ID.—NATURE OF CHATTEL MORTGAGE—EFFECT OF MORTGAGEE'S POS-SESSION.—In this state a mortgage is but an incident of the indebtedness, the property is impressed with only a lien for the benefit of the mortgagee, the legal title remains in the mortgagor, and the mortgagee is not entitled to possession unless authorized by the express terms of the mortgage, and if, upon the mort-gagor's default, the mortgagee does take possession, his interest in the property is not enlarged or affected thereby, nor is the

1.  What transactions are usurious, notes, 81 **Am. Dec.** 736; 46 **Am. St. Rep.** 178.

Taking interest in advance as usury, note, **Ann. Cas.** 1915C, 1156.

mortgagor's right of redemption cut off, but the only effect is to enhance the mortgagee's security.

[5] ID.—ONCE A MORTGAGE ALWAYS A MORTGAGE—MEANING OF DOCTRINE.—The established doctrine that what is once a mortgage is always a mortgage means that no agreement in advance to waive the equity of redemption is valid and that when once it is established that a transaction is impressed with the character of a mortgage the right to redeem will continue until the debt is paid or until the equity of redemption is foreclosed or barred, or duly and sufficiently released.

[6] ID.—LEASE CONTRACT—SECURITY FOR DEBT—DEFAULT OF MORTGAGOR—RIGHT OF MORTGAGEE—VOID PROVISIONS.—It is not competent for the parties to make a conveyance of property, absolute in form, a security for the payment of money by a given day, with the further agreement that if payment is not made the instrument shall be treated as an absolute sale, and a provision in a "lease," which is in effect a chattel mortgage, that if the debt be not paid the title shall vest absolutely in the mortgagee is void, and such a provision is not severable from a provision giving the mortgagee the right of possession upon the mortgagor's default, and both provisions are therefore invalid.

[7] ID.—SEIZURE OF MORTGAGED PROPERTY—CONVERSION—EXTINGUISHMENT OF LIEN.—Where the mortgagee, after seizure of the mortgaged property in replevin and delivery to him, converted it to his own use by making a conditional sale thereof to a third party, such conversion was inconsistent with the continued existence of the mortgage lien and effected an extinguishment thereof.

[8] CONVERSION—REPLEVIED PROPERTY—VALUE OF USE.—Where replevied property has a value on account of the use to which it may be put as distinguished from its value for sale or consumption, the successful defendant may recover the value of the use of the property during the time it was unlawfully withheld from him under the writ.

[9] ID.—INABILITY TO SECURE RETURN OF PROPERTY—RECOVERY FOR USABLE VALUE.—Where the property has a value on account of the use to which it may be put in excess of the legal rate of interest upon its value for sale or consumption, the defendant may recover such usable value notwithstanding the fact that he may be unable to secure a return of the property from the plaintiff but may have to take in lieu thereof the value of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles Robert McCarty for Appellant.

Davis & Thorne for Respondents.

FINLAYSON, P. J.—This is an appeal by plaintiff from the judgment in an action brought by him to recover possession of an automobile. The case comes to us on the judgment-roll only. The action, commenced on May 6, 1919, was originally brought in the name of J. L. Blodgett; subsequently, as shown by a supplemental complaint, the J. L. Blodgett Company, a corporation, succeeded to all of the rights of the original plaintiff; but this notwithstanding, it will conduce to brevity if we discuss the case as though there had been no such change of interest.

The complaint alleges that on February 18, 1919, plaintiff was and ever since has been the owner of and entitled to the possession of the automobile; that it is of the value of $500, and that defendants unlawfully withhold it. The defendant George W. Rheinschild answered, denying the allegations of the complaint, and, in a cross-complaint, alleges facts showing that on February 18, 1919, he executed to plaintiff a bill of sale of the automobile to secure a sum of money loaned to him by plaintiff at a usurious rate of interest; that the full amount of the loan did not become due until August 18, 1919, which was more than three months after plaintiff brought this action; and that immediately after commencing the action plaintiff obtained possession of the car from the sheriff, by whom it had been seized pursuant to proceedings had under section 509 et seq. of the Code of Civil Procedure; wherefore the answering defendant, the respondent here, prayed that, upon his repaying the loan that had been made to him by plaintiff, he recover possession of the car, or its value, with damages for its detention.

The findings of the court disclose a situation substantially as follows: The answering defendant, George W. Rheinschild —the party alluded to when, hereafter, we refer simply to the defendant—had purchased the automobile prior to February 18, 1919, from a third party whose name is not disclosed by the record. On the date last mentioned defendant owed his vendor, on account of the purchase price of the automobile, a balance of $276.50. On February 18, 1919,

plaintiff loaned to defendant the sum of $400, a part of which was used by defendant in paying the latter's vendor the balance due on the purchase price of the car. As security for the $400 thus loaned by plaintiff to defendant, the latter executed to plaintiff a bill of sale of the automobile. Contemporaneously with the execution of the bill of sale, and as a part of the same transaction, plaintiff and defendant executed an instrument in writing, in form a lease, which, after reciting that the defendant, as lessee, has hired and received from the plaintiff, as lessor, the automobile in question for the term of six months, provides that the "lessee" (defendant) shall pay the "lessor" (plaintiff), as rental for the hire of said automobile during said term of six months, the sum of $434.70, payable in six monthly installments of $72.45 each, commencing on March 18, 1919, and ending on August 18, 1919, with interest at the rate of one per cent per month after the termination of the "lease" until the whole amount of the "rent" shall be paid. The document contains the following provisions respecting plaintiff's right to take possession: "If the lessee defaults in any of the above payments, when due, or breaches any provision of this lease, . . . the lessor may, at his option, without previous demand or notice, . . . retake possession of said automobile . . . with or without process of law; and all payments theretofore paid hereunder shall thereupon be forfeited to the lessor, and this lease shall thereupon terminate, and all rights of lessee in this contract and said automobile shall thereupon cease and are hereby waived; . . . or the lessor may declare the whole of the sums then remaining unpaid to be immediately due and payable, and sue therefor." The document further provides that if the "lessee" shall make all payments when due, then he shall have the right to purchase the automobile by paying the "lessor" one dollar, and thereupon the latter shall execute to the "lessee" a good and sufficient bill of sale.

There were no writings of any kind other than the so-called "lease" and the bill of sale to plaintiff. Defendant had acquired possession of the automobile from his vendor prior to the time when he secured the loan from plaintiff. This possession he retained, undisturbed, until May 7, 1919, when, as we have stated, the automobile was taken from him by the sheriff and delivered to plaintiff pursuant to proceedings

had under section 509 et seq. of the Code of Civil Procedure.

From the foregoing it is obvious that if plaintiff ever had any right to the possession of the automobile it was only because he had a mortgage lien on the car, created by defendant's execution of the bill of sale and the so-called "lease."

The $400 that plaintiff loaned to defendant was applied and paid out as follows: $276.50 was paid to the former owner of the automobile, defendant's vendor, to satisfy the unpaid balance of the purchase price then owing to him by defendant; $16.50 was retained by plaintiff to pay for insuring the car during the life of the so-called "lease"; and the balance, $107, was paid to defendant.

The $434.70 mentioned in the "lease"—the total amount that defendant agreed to repay to plaintiff in six monthly installments of $72.45 each—is made up of the following: The $400 that was actually loaned to defendant, and which was paid to him or applied to his use as aforesaid; the sum of $14.70 which represents "interest" charged defendant for loaning him the sum of $400 for the term of six months; and the sum of $20, exacted by plaintiff "as a commission for making the loan." The interest charge of $14.70, bearing in mind that one-sixth of the principal was repaid to plaintiff every month, and making due allowance therefor, exceeds by seventy cents interest at the rate of twelve per cent per annum on the loan of $400 for six months.

[1] The $400 actually loaned to defendant was the property of plaintiff; the latter himself negotiated the loan directly with defendant—that is, there was no agent or intermediary in the transaction; there was, therefore, no occasion for the payment of a "commission" by either the borrower or the lender. Designating the $20 as a "commission" did not make it such. This word "commission" was but a euphemism, employed in an attempt to justify the exaction of a greater sum for the loan than at the rate of $12 upon $100 for one year—the maximum amount that a lender is entitled to ask or receive since the present usury law was adopted at the general election held November 5, 1918. The device of a "commission" has, therefore, the characteristics of a shift to circumvent and avoid the usury law. "As

a general rule, any benefit or advantage exacted by the lender from the borrower, whatever be its name or form, which, added to the interest taken or reserved, would yield to the lender a greater profit upon his loan than is allowed by law is deemed usury." (39 Cyc. 971.)

The automobile having been seized by the sheriff and delivered to plaintiff on May 7, 1919, defendant, to secure its return, gave the necessary redelivery bond, and the car was immediately returned to him, remaining in his possession until October 2, 1919, when it again was seized by the sheriff under a default judgment entered against defendant on September 25, 1919. That judgment was subsequently set aside, but only on condition that the automobile should remain in plaintiff's possession as security for the loan. It continued in plaintiff's possession until March 12, 1920, when the latter delivered it to a third party under a conditional sale contract.

Defendant has made no payment on account of the money loaned to him by plaintiff. While the automobile was in plaintiff's possession, subsequent to its seizure by the sheriff, plaintiff caused needed repairs to be made, amounting in the aggregate to the sum of $138.12. The court found the value of the car to be $550, and its usable value, during the time that defendant was deprived of its possession, to be $210, or at the rate of $20 per month for ten and a half months.

As conclusions of law the lower court found that the charge of $20 as a "commission" for making the loan of $400 to defendant was contrary to law, and that by reason thereof plaintiff never acquired any right to the possession of the automobile; that, therefore, the car was unlawfully seized by plaintiff, and that defendant is entitled to a judgment for the sum of $210, damages for the detention of the automobile after its seizure in this action, less the sum of $138.12, the amount expended by plaintiff for necessary repairs while the car was in his possession; also that defendant is entitled to the return of the automobile upon the payment to plaintiff of the sum of $400, or, if delivery cannot be made, that defendant have judgment for the value of the car, $550, less said sum of $400. Judgment was entered accordingly.

Appellant claims that if the contract was usurious, and if for that reason, the provision for installment payments by

respondent, the borrower, was void, nevertheless, upon the maturity of the full amount of the debt on August 18, 1919, which was after appellant had commenced this action, he became entitled to take possession of the automobile. And because the property, which, as we have said, had been taken from respondent by the sheriff and delivered to appellant, was in the latter's possession when the judgment was rendered, it is claimed by appellant that even if he did not have the right to possession at the time when he brought the action, nevertheless, if he subsequently acquired such right, that is, if he acquired the right to possession upon the maturity of the whole amount of the debt, the court should not unconditionally redeliver the property to respondent, but should adjudge that the latter is entitled to redelivery only upon condition that he pay appellant the amount actually due the latter at the date of the judgment. Appellant concedes that the trial court attempted to pursue this course, but contends that the amount adjudged to be due him from the respondent is less than it should be. Without deciding the question, we shall assume, for the purposes of this decision, that, even though appellant may not have had the right to possession when he commenced the action, respondent, nevertheless, will be entitled to redelivery only upon payment of the precise amount due by him to appellant if the latter, at any time before judgment, had become entitled to take possession.

Both parties have argued the case upon the assumption that the only usury act that can have any possible application is the initiative measure that was approved at the general election held November 5, 1918 (Stats. 1919, p. lxxxiii), section 2 whereof provides: "No person . . . shall directly or indirectly take or receive . . . any greater sum . . . for the loan . . . of money . . . than at the rate of twelve dollars upon one hundred dollars for one year. . . . Any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest, and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed.''

[2]   The first point made by appellant is that even if the charge of a "commission" of $20, in addition to the sum of $14.70 charged as interest, be tantamount to the taking and receiving by the lender, the plaintiff in this action, of a sum in excess of twelve per cent per annum on the amount loaned, contrary to the above-quoted provision of the initiative act, nevertheless appellant, to quote the language of his brief, is "entitled to legal interest (one per cent per month) allowed by law and provided for in the agreement between plaintiff and defendant," and that such interest should have been added to the amount which the judgment required respondent to pay to appellant as a condition precedent to a redelivery of the automobile. This contention, if upheld, would not only do violence to the express letter of the law, but would frustrate its manifest intent and purpose. Section 2 of the act expressly declares: 1. That any contract of any nature in conflict with its provisions shall be "null and void" as to "any agreement . . . to pay interest"; 2. That in such case "no action at law to recover interest *in any sum* shall be maintained"; and 3. That the debt cannot be declared due "until the *full* period of time it was contracted for has elapsed"—which, in this case, was not until the expiration of August 18, 1919, or more than three months after plaintiff brought this action. We think it is clearly the intent of this initiative measure that there shall be no recovery of any interest whatever, and that the loss of all interest, whether accruing before or after the maturity of the debt, is one of the penalties contemplated by the act. When the initiative measure declares that if the contract be usurious "no action at law to recover interest *in any sum* shall be maintained," it ought to be understood to mean exactly what it says, namely, that if any person shall contract for a usurious rate of interest he shall not recover interest "in any sum." If only interest before the maturity of the debt were intended to be banned, such intent could have been accomplished by that provision of the act which declares that the usurious contract shall be null and void "as to any agreement . . . therein to pay interest." For if the act contained only that provision, then the usurious contract would have to be read as though it had made no mention of any interest whatever, in which case there might be ground for the claim that the debt should

draw interest at the legal rate after its maturity. It obviously was for the purpose of preventing any such benefit to accrue to one who lends money at a usurious rate that the provision which nullifies the agreement as to interest is followed by the other provision which declares that such lender shall not recover "interest in any sum."

[3] It next is contended that the judgment is erroneous in so far as it allows defendant damages in the sum of $210 for the detention of the automobile by plaintiff for the ten and a half months that it was in the latter's possession during the pendency of the action. The greater part of this period of ten and a half months accrued after the maturity of the whole amount of defendant's indebtedness. It is argued, therefore, that, at least as early as the full maturity of the debt, plaintiff was entitled to possession under the terms of the written agreement, and that, therefore, defendant is not entitled to damages for any part of the period during which plaintiff was thus rightfully in possession of the property. The vice of this argument lies in the assumption that, under the terms of the written contract—the "lease," so called—plaintiff became entitled to possession upon defendant's default in the payment of his debt at maturity. We think that the provision in the "lease" purporting to give to plaintiff the right to take possession of the property upon any default by defendant in the payment of his debt does violence to the doctrine that "what is once a mortgage is always a mortgage," and that, therefore, it is wholly nugatory. The transaction evidenced by the "lease" and by defendant's bill of sale to plaintiff was but a mortgage. The two documents were executed for the purpose of securing a debt. They were given to secure the repayment of the loan that plaintiff made to defendant. The possession remained in defendant, the owner of the property. As between the parties, therefore, the transaction was a mortgage. (Civ. Code, sec. 2924.) [4] In this state the mortgage is but an incident of the indebtedness, the property is impressed with only a lien for the benefit of the mortgagee, the legal title remains in the mortgagor, and the mortgagee is not entitled to possession unless authorized by the express terms of the mortgage (Civ. Code, sec. 2927) ; and if, upon the mortgagor's default in the payment of his debt, the mortgagee does take possession

under an express stipulation therefor in the mortgage, his interest in the property is not enlarged or affected thereby, nor is the mortgagor's right of redemption cut off. (*Harper* v. *Gordon*, 128 Cal. 492 [61 Pac. 84].) If a mortgagee take possession under the terms of his mortgage, he does so only for the purpose of increasing his security—his security being enhanced by the fact that if he has possession the property will naturally bring a higher price at a foreclosure sale, or at a public sale made as in the case of a "pledge," since the validity of the sale, whether the property be sold as a pledge or under a decree of foreclosure, depends upon the presence of the property at the place of sale. (*Ely* v. *Williams*, 6 Cal. App. 455 [92 Pac. 393].) So much for the purpose for which a mortgagee may take possession of the mortgaged property. [5] Turning now to a consideration of certain contracts which the law forbids a mortgagee to make with his mortgagor: It is an established doctrine that "what is once a mortgage is always a mortgage"—which means that no agreement in advance to waive the equity of redemption is valid, and that when once it is established that a transaction is impressed with the character of a mortgage the right to redeem will continue until the debt is paid or until the equity of redemption is foreclosed or barred, or duly and sufficiently released. (Civ. Code, sec. 2889; *Bradbury* v. *Davenport*, 114 Cal. 593 [55 Am. St. Rep. 92, 46 Pac. 1062].) [6] For the same reason it is not competent for the parties to make a conveyance of property, absolute in form, a security for the payment of money by a given day, with the further agreement that if payment is not made the instrument shall be treated as an absolute sale. If the instrument is a mortgage when delivered, it will so continue until the right of redemption is cut off in some of the modes recognized by law. (*Bearss* v. *Ford*, 108 Ill. 16, 26; 27 Cyc. 975.)

The provision in the "lease" under which plaintiff claims the right to take possession if defendant defaults in any payment is more than a mere contract for the transfer of possession to the mortgagee as further security for his loan to the mortgagor. It is, in effect, a contract whereby the parties undertook to provide that if payment be not made when due the mortgagor's right of redemption shall

be cut off and the title vest absolutely and unconditionally in the mortgagee. Under the doctrine "once a mortgage always a mortgage," such an agreement is wholly void. This particular provision of the "lease" is not severable; it is indivisible. The clause which purports to give to plaintiff, the mortgagee, the right to take possession is indissolubly connected with the clauses which purport to cut off defendant's right of redemption. The provision is, therefore, void *in toto,* and does not give to plaintiff any right whatever to possess the mortgaged property. From this it follows that plaintiff's possession, acquired after the sheriff had seized the property and delivered it to him, was without right, and that, therefore, he is liable to damages for its detention.

[7] Moreover, according to the findings of the trial court plaintiff converted the property to his own use during the pendency of the action, thus extinguishing his lien and any right to possession. It is expressly found by the lower court that on March 20, 1920, and while the automobile was in plaintiff's possession, he delivered it to a third party under a conditional sale contract, and that such third party is now in possession under that contract. This disposition of the automobile under a private sale thereof was an unlawful assumption of dominion over the property in defiance of defendant's rights, made at a time when, if plaintiff had any right whatever to possession, it was for the purpose, and only for the purpose, of increasing its security. Such unlawful assumption of dominion amounted to a wrongful conversion of the property, inconsistent with the continued existence of plaintiff's mortgage lien, and effected an extinguishment thereof. (Civ. Code, sec. 2910; *Everett* v. *Buchanan,* 2 Dak. 249 [6 N. W. 439, 8 N. W. 31]; *Loughborough* v. *McNevin,* 74 Cal. 255 [5 Am. St. Rep. 435, 14 Pac. 369, 15 Pac. 773]. See, also, *Hudson* v. *Swan,* 83 N. Y. 552.) From this it follows that if any right to possession accrued to plaintiff after the commencement of the action such right was extinguished with the extinguishment of the lien, since it could exist only for the purpose of enhancing the security afforded by the lien.

[8] Where, as here, the property has a value on account of the use to which it may be put, as distinguished from its value for sale or consumption, the successful defendant may

recover the value of the use of the property during the time it was unlawfully withheld from him under the writ. (Ann. Cas. 1914A, p. 379, note to *Thomas* v. *First Nat. Bank.*)

The judgment is in the alternative; that is, it adjudges that, upon the payment to plaintiff of the sum of $400 owing to him by defendant, the latter shall recover the automobile, or its value if delivery cannot be had. Because of this alternative form of the judgment it is contended that it was error to award to defendant the usable value of the automobile during the time of its detention by plaintiff. There is no merit in this contention. It is expressly provided by section 667 of the Code of Civil Procedure that "if the property [involved in a replevin action] has been delivered to the plaintiff, and the defendant claim the return thereof, judgment for the defendant may be for a return of the property or the value thereof, in case a return cannot be had, and damages for taking and withholding the same." [9] Where the property has a value on account of the use to which it may be put in excess of the legal rate of interest upon its value for sale or consumption, the defendant may recover such usable value notwithstanding the fact that he may be unable to secure a return of the property from the plaintiff but may have to take in lieu thereof the value of the property. (See *Nahhas* v. *Browning*, 181 Cal. 55 [6 A. L. R. 476, 183 Pac. 442], and *Schrandt* v. *Young*, 62 Neb. 254 [86 N. W. 1085].)

The judgment is affirmed.

Works, J., and Craig, J., concurred.