[Civ. No. 3859. Third Appellate District.—December 7, 1929.]

SAN JOAQUIN FINANCE CORPORATION (a Corporation), Plaintiff and Respondent, v. T. E. ALLEN, Defendant and Appellant.

Whitehurst & Logan for Appellant.

Fenston & Williams and Ray W. Hays for Respondent.

FINCH, P. J.—The plaintiff brought this action to recover an automobile which the defendant held under a conditional sale contract. The answer alleges that the defendant has paid the full purchase price of the automobile; that the contract provides for the payment of $220 in addition to the purchase price "as interest thereon, and as a fee and bonus" for making a loan to the defendant; and that

the "agreement to pay said sum of $220 . . . was and is illegal and void under the provisions of the usury law of the State of California." The plaintiff was given judgment for the recovery of the automobile and the defendant has appealed.

There is no substantial conflict in the evidence. It appears therefrom that the defendant purchased the automobile from Robertson & Robertson under a rough memorandum agreement for $1900, payments to be made at the rate of "$50 a month for 11 months, payment to be extended for another year if wanted." A few days after this agreement was signed Kenneth Robertson, one of the sellers, told the defendant "he would like to assign this contract to the Weaver Co., but he said the Weaver Co. would not accept the contract . . . and he would have to make a new one" and said: "If you will do this, I will stand back of you so that it won't cost you anything to refinance it." A conditional sale contract, in the usual form, dated March 10, 1926, was thereupon executed by the parties, providing for the payment of monthly installments for eleven months and the balance of $979.09 on March 15, 1927. Robertson & Robertson immediately assigned all their right, title and interest in the automobile and the contract to L. F. Weaver Company. The defendant paid that company all installments as they fell due except the final one of $979.09. The defendant had possession of the automobile at all times after the first contract was executed.

March 22, 1927, without any change of possession, Kenneth Robertson and the defendant executed a conditional sale contract, by the terms of which the former purported to sell to the latter the same automobile. At that time the defendant made a payment of $49.09, thereby reducing the balance due to the sum of $930. In this contract the automobile is described as "new." The contract provided for payment of "the total purchase price of $1,840 as follows: $910 upon the signing of this contract, the receipt of which is hereby acknowledged, and the balance of $930 plus interest and service charges, as follows": Then follows a list of eighteen monthly payments to be made, beginning with May 1, 1927, aggregating $1150. On the day the contract was executed, Robertson assigned it to the Merced Loan & Insurance

Agency and, on the following day, that company assigned it to the plaintiff.

The defendant testified that he did not at any time receive any "money or anything of value under this contract"; that after its execution he received from the L. F. Weaver Company the contract which had been assigned to it, marked "paid," and "the certificate of ownership" of the automobile; that he "simply kept the car"; that he thereafter delivered the certificate to the plaintiff at its request; that at the time the last contract was executed there were present Robertson and W. Mill Brown, the latter apparently being the person who subscribed the name of the Merced Loan & Insurance Agency to the assignment of the contract to the plaintiff; that the defendant there stated that the amount due was $930 and that he "was taking care of the insurance on the car, . . . full coverage" and that in fact he had paid for such insurance; that Brown said that $1150 would be "the face of the new contract." The defendant's testimony continues: "I was very much enraged at the idea of charging me . . . $220 for the use of $930. . . . We argued back and forth for probably a couple of hours. I told Mr. Robertson I had just as well leave the car there, as I couldn't meet the terms of the contract of that kind. . . . I told Mr. Robertson that my understanding was with him, the reason I bought the car from him, he was to finance me till I got it paid for at $50 a month, without further consideration. . . . That was why I went to Merced to buy the car from Mr. Robertson. . . . I had to agree to (the terms of the proposed contract) or leave my car." The defendant paid the plaintiff the full sum of $930 in monthly installments as provided for in the contract, informing the plaintiff, at the time of paying the first installment, that it was his intention "to claim the benefits of the usury law." Neither Robertson nor Brown testified in the case, though it appears that the latter was present at the trial, and the defendant's testimony stands uncontradicted. No attempt was made by the plaintiff to show any justification for the addition of $220 to the balance due on the contract price. Neither of the contracts made any provision for interest except on overdue installments and it is fair to presume that, as is usual in such contracts, the interest on deferred payments was included in the contract price. If it be

assumed that the additional sum of $220 was intended to cover interest charges on the contract of March 22, 1927, that sum is greatly in excess of interest at any lawful rate. ■ If the defendant's testimony is true, then there were no services performed or to be performed for which any part of the $220 was intended to be compensation. Giving due consideration to the failure of the plaintiff to introduce any evidence in rebuttal of the defendant's testimony, there appears to be no escape from the conclusion that the defense of usury was thoroughly established. To frustrate evasions of the Usury Law "the courts have been compelled to look beyond the form of a transaction to its substance." (27 R. C. L. 211; *Van Noy* v. *Goldberg,* 98 Cal. App. 604 [277 Pac. 538].)

■ Respondent says: "If $68.89 as computed by counsel represents interest, then $151.11 was paid to the Merced Loan & Insurance Company as a service charge or commission." But the contract was made by defendant directly with Robertson, who then assigned to the Merced Loan & Insurance Agency, which, in turn, assigned to the plaintiff. No broker participated in the transactions, and the excess amount provided for by the contract cannot be justified on the ground that it was a brokerage charge. (*Blodgett* v. *Rheinschild,* 56 Cal. App. 728 [206 Pac. 674].) This excess was to be paid to Robertson or his assigns, and no one of them acted in the capacity of broker.

■ Respondent contends that the appellant is estopped by the terms of the contract to set up the usurious nature thereof. The contract provides: "As a part of the conditional sales contract, it is agreed that in the event the seller shall assign this contract and the moneys payable thereunder to a third party, then all moneys payable under this contract by the buyer shall be paid to such assignee without recoupment, setoff or counterclaim of any sort whatsoever. . . . It is agreed by the buyer and seller or his assigns that this contract contains the entire agreement made between them."

Appellant cites *American Nat. Bank* v. *A. G. Sommerville, Inc.,* 191 Cal. 364 [216 Pac. 376, 378], as an authority in support of the contention that the defendant is estopped. The terms of the contract involved in that case were more sweeping in favor of the assignee of the seller than those

here under consideration, but the court held that there was no estoppel shown. That case holds that "conditional contracts of sale are nonnegotiable instruments in this state" and that it is always open to a party to dispute a recital of consideration contained in such a contract. The provision in the contract in the instant case to the effect that the buyer was to pay the additional sum of $220 for "interest and service charges" relates to the consideration for the defendant's promise and, at most, is only *prima facie* evidence of a consideration.

It is true that the contract purports to be an original contract of sale of a "new" automobile and, had it recited that the purchase price was $1150, it might be argued with much force, on the authority of the case cited, that such recital constituted an estoppel *in pais*, available to a purchaser of the contract for value and without knowledge of the true purchase price, but the contract in this case recites that $1840 is "the total purchase price," of which $910 was paid on the execution of the contract, leaving only $930 of such purchase price unpaid. It appears, therefore, that the respondent's claim of estoppel is without support in the record.

The judgment is reversed.

Jamison, J., *pro tem.,* and Thompson (R. L.), J., concurred.