## CENTRAL UNITED NATIONAL BANK, Trustee Successor, etc v ALLSHOUSE et

Ohio Appeals, 9th Dist, Summit Co

No 2201.  Decided July 19, 1933

Davies & Eshner, Cleveland, and C. C. Chisnell, Akron, for plaintiff in error.

Frank, Ream & Schenz, Akron, for defendants in error.

FARR, J, (7th Dist) sitting in place of WASHBURN, PJ.

## OPINION

**By THE COURT**

First, then, Was the contract in question usurious?

In view of the opinion filed by the trial court, which is reported in 30 **N.P.** (N.S.) 17 and which indicates extensive research, and since this court agrees with the conclusion reached by the court below, it would be superfluous and unnecessary to enter into a discussion of facts, cases and authorities reflecting upon the issues involved.

Exhaustive briefs were filed by counsel on both sides, which have been examined with care, so that it is not believed to be necessary to again rehearse the facts here involved. It is sufficient to say that this court is in accord with the finding of the court below, but desires to add some cases and authorities which appeal as being well upon the point.

In the opinion of the court in the case of Blodgett v Rheinschild, 56 Cal. App. 728, there are many helpful and suggestive citations reflecting directly upon the instant case; the opinion at page 732 reading in part as follows:

"The $400 actually loaned to defendant was the property of plaintiff; the latter himself negotiated the loan directly with defendant—that is, there was no agent or intermediary in the transaction; there was, therefore, no occasion for the payment of a 'commission' by either the borrower or the lender. Designating the $20 as a 'commission' did not make it such. This word 'commission' was but a euphemism, employed in an attempt to justify the exac-

tion of a greater sum for the loan than at the rate of $12 upon $100 for one year—the maximum amount that a lender is entitled to ask or receive since the present usury law was adopted at the general election held November 5, 1918. The device of a 'commission' has, therefore, the characteristics of a shift to circumvent and avoid the usury laws. 'As a general rule, any benefit or advantage exacted by the lender from the borrower, whatever be its name or form, which added to the interest taken or reserved, would yield to the lender a greater profit upon his loan than is allowed by law is deemed usury.' (39 Cyc. 971)."

The foregoing presents a very fair discussion of principles which are of value in the consideration and decision of the instant case.

It may not be amiss to call attention to 27 R.C.L., under the head "Usury," §12, at pages 211 and 212, where there is a discussion of "Devices to Conceal Usury," as follows:

"The cupidity of lenders, and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to obtain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devices to evade the usury laws; and to frustrate such evasions the courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered. No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings. Every species of contrivance in the modification of any loan or contract, for the purpose of evading the statute, being cases within the mischief, are also within the remedy. Usury is a moral taint wherever it exists, and no subterfuge shall be permitted to conceal it from the eye of the law; this is the substance of all the cases, and they only vary as they follow the detours through which they have had to pursue the money lender. Though the principle stated above

may be extracted from all the cases, yet as each depends on its own circumstances, and those circumstances are almost infinitely varied, it is not surprising if there should be some seeming conflict in the application of the rule by different judges. Different minds allow a different degree of weight to the same circumstances. A distinction has been drawn between cases wherein a transaction is given a certain form to cover usury and wherein it is given that form to escape usury. In the latter instance, it is insisted, the transaction is not usurious, as parties have a perfect right to deal with each other with the usury laws before their eyes, and so to shape the transaction to avoid the condemnation of those laws."

From the foregoing, one gets a very satisfactory impression of the consensus of opinion upon the subject there under discussion. Again, in §39, at pages 236 and 237, it is said:

"It is not unusual for a borrower to employ an agent or broker to negotiate a loan for him, and the amount paid for such services, added to the interest on the loan, may exceed the legal rate of interest, but the payment of such compensation will not make the loan usurious, so long as the lender was not employing the broker as his own agent or receiving from him any of the money paid by the borrower, even though the broker performed some services which might properly have been performed by the lender or his agent. This rule is in no wise changed by the existence of a statute providing that it shall not be lawful for any person to take for any loan or advance of money any more than a certain per cent either directly or indirectly, by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever. But if it was a part of the transaction that the broker divide with the lender the commission or other thing of value which was given to him for securing the loan, the transaction is usurious. While a broker who in good faith negotiates loans from others may charge a borrower a commission without rendering the loan, at full rate of interest, usurious, he cannot charge a commission when he himself advances the money loaned. The fact that the agent of the borrower, who negotiated the loan for him and received compensation therefor, divided it with an agent of the lender has been held not to render the transaction usurious."

And again, in §39, at pages 237 and 238:

"Certainly a loan is not usurious by reason of commissions paid by the borrower to the lender's agent, where the amount of the commissions in addition to the interest contracted for does not exceed the rate of interest allowed by law. And in any view a loan is not rendered usurious by the fact that the borrower pays the lender's agent for services a sum which, added to the interest, exceeds the legal rate, if the services for which the agent is compensated are not such as the lender ought to have performed or paid for, and the compensation is not shared, nor agreed to be shared, with the lender. The fact that the charge was unreasonable is not material, except so far as the unreasonableness may indicate an intent to evade the law. According to the weight of authority, a loan is not rendered usurious by the lender's agent charging the borrower, for his own benefit, a commission for procuring the loan, if the commission was charged without the lender's knowledge or consent. Where there is an entire innocence and ignorance on the part of the lender it is not material that the person representing him as his agent also occupied a very confidential relation toward him, if, as a matter of fact, he has neither notice of the usurious exaction nor any interest in its proceeds. This rule was applied in one case where the agent was the husband of the lender, and in another case where he was the president of the bank which made the loan. In opposition to the general rule stated the view is sometimes taken that the act of the lender's agent in making profit for himself by exacting a bonus or commission from the borrower will make the transaction usurious, whether it was done with or without his principal's knowledge and consent. And sometimes it is provided by statute that a principal is bound by the usurious contracts of his agent though entered into without the actual knowledge of the principal."

The foregoing are cited for the purpose of disclosing the trend of judicial thought on the issue under discussion in this case. Perhaps there is nothing which stands out more prominently in the theory of law and principles of equity than the subject of usury, or is more positively inveighed against than that subject; it is indeed always a moral taint.

Second: concerning the issue of a bona fide holder for value in due course.

The original obligations of Allshouse are clearly shown not to be in the hands of innocent purchasers for value but to be hypothecated as collateral security for the payment of bonds issued by the Southern Securities Corporation, the original lender, and which collateral could be at any time withdrawn by the Southern Securities Corp. and other securities substituted by it as collateral for its bonds.

Furthermore, the president of the Southern Securities Corp., located at Ashland, Ky., and which corporation made the loan to Allshouse, was also president of the Ashland National Bank, of Ashland, Ky., which was the trustee that held the Allshouse bonds as security for the bonds issued by the Southern Securities Corp.; and two or three more of the directors or other officers of said Ashland National Bank were stockholders of the Southern Securities Corp.

Under such circumstances, we are of the opinion that the defenses available to the maker of a negotiable instrument as against the original payee thereof, and which are not available as against an innocent holder for value, are available to Allshouse, as the holders of the bonds of the Southern Securities Corp. are not innocent purchasers of the securities issued by Allshouse. Moreover, there is some question as to whether or not the Allshouse bonds are in reality such instruments as to which the negotiable instruments law of innocent purchaser applies.

Therefore it follows, in view of the foregoing, that the judgment should be affirmed, and it is so ordered.

FARR, FUNK and STEVENS, JJ, concur in judgment.