[Civ. No. 12841. Second Dist., Div. Three. June 30, 1942.]

ROBERT E. PERLICK et al., Respondents, v. PACIFIC DISCOUNT CORPORATION (a Corporation) et al., Appellants.

Helgoe & Hart and Bartlett & Kearney for Appellants.

Biby & Biby, John E. Biby and Peter D. Knecht for Respondents.

WOOD (Parker), J.—In this action for conversion of an airplane judgment was for plaintiffs for $7,000 actual damages against the three defendants and $3,000 exemplary damages against the two individual defendants.

The trial court found that plaintiff Smith purchased a Beechcraft racing airplane in August, 1937, by transferring to the seller certain shares of stock which had a book value of $12,500; that plaintiff expended more than $6,000 in reconditioning the plane; that in August, 1938, Smith trans-

ferred the title to the plane to plaintiff Perlick in trust for Smith; that on December 21, 1938, plaintiffs were indebted to certain persons in the amount of $2,200 for repair work on the plane; on that day plaintiffs requested defendants to loan them said amount for the purpose of paying the creditors and stated to defendants that one of the creditors was threatening to sell the plane unless he was paid immediately; that defendants said they would loan said sum for 90 days provided plaintiffs would pay $220 interest and that the only way they could do that would be for Perlick to transfer the title to the plane to defendant, Pacific Discount Corporation, and to take an option to repurchase the plane for $2,420; that thereupon defendants prepared a bill of sale (in the usual form) which was signed and executed by Perlick whereby the title to the plane was transferred to defendant Pacific Discount Corporation; that thereupon defendants prepared a writing whereby defendant Pacific Discount Corporation gave Perlick the right to purchase the plane from said defendant at any time within 90 days from said December 21, 1938, for $2,420, and said writing was executed by Pacific Discount Corporation and Perlick; that said corporation paid $2,200 to Perlick by several checks payable to Perlick in the various amounts due from Perlick to different creditors; that a few days prior to the expiration of the 90-day period plaintiffs told defendants that plaintiffs would not be able to pay said $2,420 at the expiration of said period and defendants said they would extend the time if plaintiffs would pay for the use of said $2,420 at the same rate charged for the use of $2,200 which additional charge for 30 days would be $40.33; that defendants did not at any time prior to April 27, 1939, have possession of or the right to control said plane; that plaintiffs did not, nor did either of them, sell said plane to defendants, and said transfer of title was for the purpose of securing the repayment of said $2,200 and the charge for the use of said money; that on April 24, 25 and 26, 1939, plaintiffs tendered payment of said $2,460.33 to Pacific Discount Corporation, being $2,200 principal and said further sums of $220 and $40.33, but said tenders were refused; that on April 27, 1939, plaintiffs tendered payment of $2,500 to said defendant, but the same was refused; that defendants Groenendyke and Huntington were the president and secretary, respectively, and the managers of said corporation; that on April 26, 1939, and for more than six months prior thereto,

plaintiffs were the owners of said plane and were in actual and lawful possession of the same; that on April 26, the defendants, without the knowledge or consent of either of the plaintiffs and without any right so to do, entered the hangar where plaintiffs had the plane stored, forcibly broke the door of said plane and removed the plane to another hangar of their own selection, and thereby converted said plane to their own use; that defendants removed certain instruments from said plane and disposed of them without the knowledge or consent of plaintiffs; that on April 27, 1939, plaintiffs demanded the release of said plane but such demand was refused; that the value of the plane on April 26, 1939, was $7,000, and this sum was the amount of loss to plaintiffs as the result of the acts of defendants; that such acts of said defendants, Groenendyke and Huntington, were wilful, wanton, malicious, fraudulent, and in reckless disregard of plaintiffs' rights and they took an unfair and inequitable advantage of plaintiffs.

The trial court made a conclusion of law that the rate of interest charged was usurious.

The defendants appeal and assert that the judgment is erroneous for the reasons (1) that the question of usury is not involved; (2) that defendants were not guilty of fraud; (3) that judgment should not have been for Perlick for either actual or exemplary damages; (4) certain findings were contradictory; (5) the evidence was insufficient to support the finding that plaintiff did not sell the airplane to defendants; (6) the evidence was insufficient to support the finding that defendants converted it; (7) parol evidence should not have been received to vary the terms of the bill of sale and option agreement; and (8) there was no justification for exemplary damages.

These points will be considered in the order above stated.

■ (1) Defendant Pacific Discount Corporation was in the business of aviation financing and aviation sales. It was a licensed personal property broker. Section 22, article XX, of the state Constitution (relating to interest rates), adopted in 1934, which was in effect at the time of the transactions herein, provided in paragraph 3 thereof that the restrictions therein relative to the rate of interest that might be charged should not apply to any duly licensed personal property broker. Although said section authorized the Legislature to prescribe the maximum rate of interest to be charged by such

brokers, such an enactment had not been made at the time of the transactions herein. Therefore, since the adoption of said section of the Constitution (until 1939 when the Legislature prescribed such rates, Deering's Gen. Laws, 1939 Supp., Act 5825) there was no statutory or constitutional provision of law limiting the amount of interest which a personal property broker may charge. (*Wolf* v. *Pacific Southwest Discount Corp.* (1937), 10 Cal. (2d) 183, 184 [74 P. (2d) 263]; *Matulich* v. *Marlo Investment Co.* (1936), 7 Cal. (2d) 374 [60 P. (2d) 842].) Appellants' contention that usury is not involved in this case is correct.

■ (2) The finding that appellants were guilty of fraud in stating to respondents that the only way they could be secured for the repayment of the loan would be for respondents to transfer the title to the plane to defendant corporation and for it to give back an option to repurchase, cannot be sustained. Such statement was an opinion concerning a legal question, defendants did not occupy a confidential relation toward appellants, and the circumstances were not such as to justify respondents in relying upon the statement. (*Bank of America* v. *Sanchez* (1934), 3 Cal. App. (2d) 238, 242 [38 P. (2d) 787].)

■ (3) It was not error to include Perlick as one in whose favor judgment was rendered. The plane was transferred to Perlick in August, 1938. He did not pay any consideration for it and it was not a gift from Smith. The court found that Perlick held the title to the plane in trust for Smith and was in possession of the plane. Smith prosecuted the action himself and through his trustee Perlick. Perlick had a qualified or limited interest, as trustee, in the plane and as such was entitled to maintain the action. In *Goldberg* v. *List* (1938), 11 Cal. (2d) 389 [79 P. (2d) 1087, 116 A. L. R. 900], at page 394 it was stated, "the reason for the rule permitting recovery by the owner of a qualified or limited interest of the full value of personal property converted, rests . . . upon the fact that the owner of the qualified interest in addition to his own loss sustains a liability toward one owning a superior interest, which will need to be satisfied."

■ (4) Appellants claim the finding that respondents were damaged $7,000 for the value of the plane is contradictory to the finding that appellants loaned plaintiff $2,200; that the result is that appellants have judgment for the value of the plane and no credit has been given for the $2,200 received;

that it is impossible to determine which finding controlled the judgment of the court. In plaintiffs' (respondents') complaint they admit the $2,200 is due to defendant corporation and offer to do whatever the court deems equitable. The trial court did not allow credit for said sum or interest thereon for the reason, apparently, that it considered that usury was involved but, as shown herein, the usury law did not apply in this case. Respondents concede that the allowance was not made; we think it should have been made.

■ (5) The evidence was sufficient to support the finding that plaintiff did not sell the plane to defendants.

Perlick testified that in August, 1938, he told Groenendyke he wanted to get money to get the ship out for the race; Groenendyke said he could not loan money on an X license ship (meaning a plane used for experimental and racing purposes); similar conversation was had in October, 1938, and at many times thereafter; about two days before December 21, 1938, Groenendyke and Huntington told him they could loan $2,000 on the plane; on December 21st, he told Huntington that he hated to borrow on the airplane and pay what it would cost to borrow in that way but it would be better than losing the plane; after the contract was prepared for a loan of $2,100, Perlick said he thought it would not cover the bills and he might need more, and Huntington said, ''Well we can let you have some more,'' a hundred dollars more; Huntington said the only way they could do it would be to draw up a bill of sale with a 90-day option to repurchase for $2,420 and that the difference of $220 would be the charge for the 90 days; the bills were paid by checks drawn by defendant corporation payable to Perlick for the various amounts of the bills and were indorsed by Perlick to the different creditors; after January, 1939, he talked to Groenendyke a number of times about money he had coming to take care of the loan; shortly before March 20, 1939, he told Groenendyke that a person wanted to refinance the plane but since the plane was stored and covered with insurance he (Perlick) thought it seemed foolish to draw up a new contract with another finance company when defendants were in the business and could let the loan ride; during another conversation about the same time, when Smith was present, Smith said he wanted to be sure not to lose the plane, that he could arrange to get the money and take care of the loan if it had to be paid but it would be a convenience if it could

be carried along, and Groenendyke said that would be all right.

Smith testified that he talked with Groenendyke by telephone about November 1, 1938, and Groenendyke said that Perlick was trying to make a loan on the plane, that there was some possibility of it being worked out and that the same rates as previously mentioned would apply; Smith said if they cared to make a loan at 10 per cent or 12 per cent to go ahead with it, but not at 20 per cent, and Groenendyke said he would not consider it; that his next talk with Groenendyke was at the hangar in the presence of Perlick on March 15th, when Smith asked if he would extend the loan and he said he didn't see any reason why it could not be extended, that they didn't need the money and were willing to let it ride.

Witness Holley, an employee of Smith, testified that he had a conversation with Groenendyke in April, 1939, wherein Holley asked him what was owed and when Groenendyke gave him the figures he (Holley) wrote them on a paper (an exhibit) the way Groenendyke gave them to him,—$2,200, $220 charges and $40.33 interest that was overdue.

The fact that the $40.33, which was charged at the time of the conversation regarding an extension for 30 days, is precisely the same amount as interest would be on $2,420 for 30 days at 20 per cent per annum is an indication that the transaction was a loan.

Defendant Groenendyke testified that he was in the aviation financing and sales business; that in October, 1938, Perlick asked for a loan on the plane and he told Perlick he could not make a loan on an X license; the subject was discussed with Perlick to the same effect several times later; about December 15th, Perlick mentioned a loan of $2,000 but it was refused and at that time Groenendyke talked with Smith by telephone but did not remember anything being said about interest and interest was never mentioned in any of the conversations with Perlick; on December 20th, Perlick told him the plane was to be sold the next day by the sheriff for a mechanic's lien on the plane unless he was able to make a loan on the plane, and Groenendyke said they were unable to make the loan but would purchase the plane for $2,200 and give Perlick an option to repurchase it after a 90-day period for $2,420; that they could not loan on the X license because it was an experimental plane and had no

resale value; the idea of buying it and selling it was to make a profit; that he told Perlick the $220 was 10 per cent and the regular commission on a sale; that although they had purchased the plane and were the owners they would charge 10 per cent commission to the person to whom the sale was made rather than the one (themselves) for whom it was made; on December 21st, Perlick said he would accept the offer, nothing was said about a loan or interest; didn't recall any conversation with Smith before the transaction; bill of sale and option were prepared by Huntington; Perlick said it was a high rate of interest and it was better for him to pay it than to lose the plane, but they pointed out to Perlick that it was not interest but commission; after the transaction they told the airport to hold the plane in the name of defendants; they never had a key to the plane and the plane was locked; they had no examination made of the plane by a mechanic before purchasing it; they did not pay delinquent taxes other than as a part of the $2,200 loaned; did not have the motor turned over to protect it while it was in dead storage; that he (Groenendyke) wrote a letter on March 24, 1939, as president of the Pacific Discount Corporation to Perlick which stated: "Your contract on Beechcraft . . . became due and payable March 21, 1939. We have called several times regarding paying off the balance due, but to date have been stalled along from day to day. You must realize that under the terms of the agreement that if this ship was not picked up before the 21st of March the property automatically becomes ours. We realize that you have needed a few extra days to settle this matter and have granted them to you, but we must have this situation cleared in full by Monday, the 27th of March. We are only too willing to work with you, but feel that we have granted as much time as we possibly can. Hoping to have your check in full by or before Monday, March 27, we remain Sincerely, . . ."

Defendant Huntington testified in substance the same as Groenendyke.

Witness Mrs. Pierce, employed as secretary by defendants, testified that Huntington called her into his office on December 21st, when Perlick was there and said Perlick was selling the plane to the defendant corporation.

This evidence warranted the court in holding that the transaction was not a sale. The letter of March 24th, from Groenendyke above set forth demanding payment and stating

if payment was not made "the property automatically becomes ours" and "hoping to have your check in full" is strong refutation of the present claim of appellants that the transaction was a sale and supports the finding that it was a loan whereby defendants were secured by a lien on the plane evidenced by a bill of sale and an option to repurchase.

In *Teater* v. *Good Hope Dev. Corp.* (1939), 14 Cal. (2d) 196 [93 P. (2d) 112], at 209 it was stated in quoting another case with approval: " 'It is the general rule that where the purpose and effect of the transaction is to create a lien on specific property as security for the payment of a debt it constitutes a mortgage, irrespective of the language used by the parties.' "

In *Bonestell* v. *Western Automotive Finance Corp.* (1924), 69 Cal. App. 719 [232 Pac. 734], at 723 it was said: "The whole transaction, though couched in the form of a bill of sale . . . and a conditional agreement of sale . . . was simply a device to secure the repayment of the sum of . . . loaned by the appellant. . . ." (See, also, *Mercantile A. Corp.* v. *Pioneer C. I. Co.* (1932), 124 Cal. App. 593, 597 [12 P. (2d) 988], citing last case above mentioned.)

In *Paladini* v. *Durchman* (1932), 216 Cal. 212, 214 [13 P. (2d) 731], it was stated: "We are satisfied that the purported 'bill of sale' legally constitutes nothing more than a chattel mortgage given as security for the repayment of the money. . . ."

The case of *Blodgett* v. *Rheinschild* (1922), 56 Cal. App. 728, 732 [206 Pac. 674], states: ". . . if plaintiff ever had any right to the possession of the automobile it was only because he had a mortgage lien on the car, created by defendant's execution of the bill of sale and the so-called 'lease.' "

■ (6) The evidence was sufficient to support the finding that defendants converted the airplane.

In addition to the above mentioned evidence, and more particularly upon the subject of conversion, there was testimony as follows:

By Perlick: That payment of the amount due, $2,460.33, was tendered defendants on April 24, 25 and 26, 1939, but was not accepted although no objection was made as to the form of the tender; on April 26th, Huntington said the plane was no good and Smith replied the plane was worth $20,000 to him and that he had a check there to pay everything

against the plane; after that conversation Perlick and Smith left Huntington's office and went to the plane and found that the glass in the door of the plane had been broken, the door taken off and six principal flying instruments had been removed; Perlick kept the plane key at home, no request was ever made to deliver the key to the defendants; the plane was removed to another hangar by defendants without his knowledge or consent.

By witness Morgan, janitor at the hangar: That Groenendyke told him in April, 1939, to get a broom and pick up some glass by Perlick's ship.

By Groenendyke: That the tenders were not accepted because the option had run out; there was no extension after March 27th, only a verbal extension of the option for two days; Huntington and Groenendyke caused the plane to be moved. The plane was locked at the time. They ordered the window cut in order to move the plane and the window was smashed or cut; did not tell Morgan, the janitor, to sweep up the glass; they sold the instruments.

By Huntington: In substance the same as Groenendyke.

As above shown, defendants had a lien upon the plane to secure their loan. Possession of and title to the plane remained with Perlick. If appellants were entitled to foreclose the lien their remedy was to foreclose it by proper legal proceedings. (*Bonestell* v. *Western Automotive Finance Corp.* (1924), *supra*, 69 Cal. App. 719, 726.) There was no proper proceeding to foreclose the lien. Moving the plane and selling the instruments mentioned was a wrongful assumption of dominion over the plane and was a conversion of it. (*Blodgett* v. *Rheinschild* (1922), *supra*, 56 Cal. App. 728, 738; *Metheny* v. *Davis* (1930), 107 Cal. App. 137, 139 [290 Pac. 91].)

 (7) It was proper under the issues here presented to receive parol evidence to show that the bill of sale and option were made and given by way of security rather than as an absolute transfer of title with the right to repurchase. (*Sterman* v. *Ziem* (1936), 17 Cal. App. (2d) 414, 419 [62 P. (2d) 160]; *Paladini* v. *Durchman* (1932), *supra*, 216 Cal. 212.) Under such circumstances parol evidence was admitted, not to alter the terms of the written instruments, but to show the purpose for which they were executed. (*Barber* v. *Motor Inv. Co.* (1931), 136 Ore. 361 [298 Pac. 216, 217].)

 (8) There was justification for the award for exemp-

lary damages. The plane was of substantial value as shown by the testimony of witnesses qualified to give an opinion upon that subject. Witnesses for the plaintiffs testified the value was as follows: Three witnesses said $13,000, one said $12,000, another $10,000 and another $9,000. Witnesses for defendants testified the value was as follows: One witness said $2,500, another $1,800, and another said between $3,000 and $4,000. According to the testimony the average life in flying hours of the kind of engine in this plane was 3,000 hours and the plane had been flown about 196 hours. When the loan herein was made, at a high rate of interest—about 40 per cent per annum, defendants knew that Perlick was about to lose the plane by reason of lien forclosure proceedings; they refused on four successive days to accept full payment of principal and interest; defendants, without the knowledge or consent of plaintiffs and at a time when they knew plaintiffs were able and anxious to pay the loan in full in order to release the lien against the plane, broke the glass in the door of the plane, detached the door, carried away and sold six important flying instruments of the approximate value of $720, removed the plane from the hangar where the plaintiffs had it stored to another hangar of defendants' selection; no proper proceedings were had by defendants to obtain possession of the plane or foreclose thereon; on April 27, 1939, after having taken the plane unlawfully they refused, upon demand that the plane be returned, to release it although $2,500 which was more than the full amount due them was tendered by a cashier's check. The defendants Groenendyke and Huntington were guilty of oppression, implied malice, reckless disregard of plaintiffs' rights and taking unfair advantage of plaintiffs.

It is provided in section 3294 of the Civil Code that, "In an action . . . not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff . . . may recover damages for the sake of example. . . ."

The case of *Dorsey* v. *Manlove* (1860), 14 Cal. 553, 556, states: "where the trespass is committed from wanton or malicious motives, or a reckless disregard of the rights of others, or under circumstances of great hardship or oppression, the rule of compensation is not adhered to, and the measure and amount of damages are matters for the jury alone."

In the case of *Prentice* v. *Zumwalt* (1932), 124 Cal. App. 646 [13 P. (2d) 379], the defendant took possession unlawfully of plaintiff's farm machinery. Over plaintiff's strenuous protest it was loaded and hauled away. While it was being loaded plaintiff tendered payment in full and it was refused. Defendant had purchased plaintiff's note secured by a mortgage on the machinery and, in taking possession of the machinery under a provision in the mortgage, was attempting to attach it and collect a balance he claimed to be due on other farm machinery voluntarily returned to defendant by plaintiff because it was not satisfactory. The court said at page 652, "A refusal to surrender the possession of the property when an adequate valid tender was made, rendered defendant liable for all damages which accrued therefrom." It was stated further on that page, "These circumstances furnish adequate evidence of implied malice and oppression."

In *Booth* v. *Peoples Finance etc. Co.* (1932), 124 Cal. App. 131 [12 P. (2d) 50], the defendants took possession of plaintiff's automobile unlawfully while it was parked in front of defendants' office and plaintiff was preparing to pay defendants the balance due on the automobile. The court said at page 145, "but the taking being held wrongful, the refusal of the defendant to accept payment of the remainder of the purchase price of the automobile furnishes some basis for supporting the verdict of punitive damages, even though it may be slight." That case also states (p. 144), "The conduct of the defendant . . . subsequent to the taking of possession of the automobile, and his refusal to redeliver the same, and also his actions when the plaintiff sought to make settlement of the entire balance . . . does furnish some basis for holding that the defendant . . . exhibited a malicious purpose." The "conduct" and "actions" of defendant mentioned in that quotation refer to his refusal to redeliver and to accept payment, and to a statement by him that, "That's the way I treat people who fight me." (This referred to a replevin action by plaintiff against defendant.)

In the present case the basis for exemplary damages was not a slight basis of a refusal to accept full payment, but included four refusals to accept full payment, acts of secretly and forcibly breaking into the locked plane, detaching, carrying away and selling important flying instruments of substantial value, wrongfully and secretly removing the whole

plane to a hangar of their own selection and refusing to release it upon demand after adequate tender of full payment.

As above stated a credit of $2,460.33, the amount of the loan and interest, should be allowed appellants. The judgment is modified accordingly.

As so modified the judgment is affirmed. Each of the parties shall bear his own costs on appeal.

Schauer, P. J., and Shinn, J., concurred.

On July 14, 1942, the judgment was modified to read as above.