[Civ. No. 2833.   Third Appellate District.—June 25, 1925.]

## WALTER SHERLOCK et al., Respondents, v. ALTURAS STATE BANK (a Corporation) et al., Appellants.

[1] CHATTEL MORTGAGES—POWER OF SALE—AUTHORITY OF MORTGAGEE TO SELL.—A power of sale, if given in a chattel mortgage, must be exercised in accordance with the provisions thereof; and the sale must be as provided by law, unless expressly otherwise directed by the mortgagor, either in the mortgage or by some subsequent manner of authorization.

[2] ID.—AUTHORIZATION TO SELL — EVIDENCE — FINDINGS — NOTICE TO VENDEE.—In this action by the mortgagors for the alleged conversion of certain sheep taken by the mortgagee and its agents from a larger band owned by plaintiffs, the evidence amply supported the finding of the trial court that plaintiffs gave no authorization to the mortgagee, or its agent, to make a sale of a part of said sheep, whether the pick thereof or otherwise, and that the defendant purchaser of the sheep taken had knowledge of the telegraphic protest of plaintiffs against the sale of a portion of the sheep.

[3] ID.—DEPOSIT OF PART OF PROCEEDS—WITHDRAWAL BY MORTGAGOR —KNOWLEDGE—RATIFICATION.—The facts that, after the purported sale of such portion of the sheep, defendant bank (the mortgagee) sent the plaintiff wife a deposit slip showing the application of a portion of the proceeds to the payment of the mortgage and the deposit of the balance to her account, and that thereafter but before the commencement of the action said plaintiff withdrew from defendant bank an amount in excess of the amount of said deposit, did not constitute a ratification by her of the act of defendants in selling a portion of the sheep, where the evidence showed that at the time of such withdrawal she was not aware that she was withdrawing all the moneys she had on deposit, but that she was under the impression she had considerably more.

[4] ID.—OFFER OF SALE—VALUE—EVIDENCE.—An offer to sell is not evidence, in and of itself, of the market value of the thing offered to be sold, especially when such offer is coupled with and conditioned upon the sale of other property at a specified price.

(1) 11 C. J., p. 705, n. 54.   (2) 11 C. J., p. 596, n. 40.   (3) 11 C. J., p. 596, n. 42.   (4) 22 C. J., p. 184, n. 39.

1. Exercise of power of sale, note, 16 Am. St. Rep. 499. See, also, 5 Cal. Jur. 113; 5 R. C. L. 467.
4. See 10 Cal. Jur. 845; 10 R. C. L. 957.

APPEAL from a judgment of the Superior Court of Modoc County. F. M. Jamison, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. S. Baldwin, Oscar Gibbons and Robnett & Wylie for Appellants.

J. E. White for Respondents.

PLUMMER, J.—This is an appeal by the defendants Alturas State Bank. A. Hafer and J. F. Hansen from a judgment in favor of the plaintiffs in an action brought against the defendants for the alleged conversion of 617 head of sheep belonging to the plaintiffs, taken and removed by the defendants from a larger band of sheep owned by said plaintiffs. It appears from the transcript that the plaintiff Anna Sherlock was the owner of a certain band of sheep numbering some sixteen hundred head, running and being in the county of Modoc, in the state of California. On or about the fifth day of November, 1921, the plaintiffs made and executed a certain promissory note payable to the defendant Alturas State Bank, in the sum of $8,500, payable ·eight months after date, bearing interest at the rate of eight per cent per annum. At the same time and to secure the payment thereof, the plaintiffs executed a certain chattel mortgage covering said band of sheep, and the increase thereof, and delivered the same to the defendant Alturas State Bank. No question is raised as to the sufficiency and regularity of said mortgage. The mortgage is in the usual form and, among other things, contains the following provisions: ''It is also agreed that if the mortgagors shall fail to make any payments as in the said promissory note provided, then the mortgagee may take possession of said property, using all necessary force so to do, and may immediately proceed to sell the same in the manner provided by law, and from the proceeds pay the whole amount in said note specified.'' The note was not paid at maturity and considerable correspondence ensued between the plaintiff Anna Sherlock and the defendant A. Hafer, the cashier and representative of the defendant Alturas State Bank, relative to the sale and disposition of said band of sheep and also of certain lands

and premises belonging to the plaintiffs. On or about the thirtieth day of September, 1922, the defendant A. Hafer, acting for the defendant Alturas State Bank, purported to sell and turned over and delivered to the defendant, J. F. Hansen, 617 sheep selected from said larger band of 1600 head mortgage as aforesaid, and received in payment from the said Hansen the sum of $6,170. Upon receipt of a check from Hansen, drawn in favor of the plaintiff for said sum, the defendant A. Hafer, without having communicated with the plaintiffs as to the manner in which said check was drawn, indorsed the names of the plaintiffs on said check, turned the same over to the defendant bank, and thereupon the defendant bank indorsed a credit on the note owing by the plaintiffs to said bank in the sum of $5,500, indorsed a credit of $500 on the note held by the bank in favor of one P. C. Webber, theretofore executed and delivered by the plaintiffs, and placed to the credit of the plaintiff Anna Sherlock the sum of $120, aggregating the full amount of the check drawn by the defendant Hansen as aforesaid.

The plaintiffs alleging that said sale was made without authority and against their protests and for a sum considerably less than the value of the sheep, began this action. The court found the value of the sheep to be $12.50 per head, and entered judgment to the effect that plaintiffs were entitled to and gave plaintiffs credit upon the note herein referred to, held by the defendant bank in the further sum of $2,092.50. The court also found that the $500, claimed to have been paid by the bank to P. C. Webber, was not in fact paid by the bank, and, by stipulation, in open court at the time of the hearing hereof, it was made to appear that the said P. C. Webber note has been paid by the plaintiffs, since the beginning of this action and was not, in fact, ever paid by the defendant bank.

Upon this appeal it is urged:

1. That plaintiffs waived a judicial sale, and therefore there was no conversion;

2. That the sale as made was previously authorized by the plaintiffs;

3. That the sale was ratified by plaintiffs by reason of their voluntary acceptance of the benefits after having full knowledge of all the facts.

The findings of the trial court were against all of these contentions, the trial court holding that no authorization had ever been given to make the purported sale; that the sale as made was against the consent of the plaintiff Anna Sherlock, who was found by the court to be the owner of said sheep; and that the said plaintiff immediately demanded a return of said property. The court also found that there was no ratification of said sale.

At the time of the execution of the chattel mortgage and during the times mentioned herein the band of sheep covered by the said mortgage was also leased to the Charles Grenade Company of Alturas, Modoc County, California, and in the mortgage it was provided that one-half of the net proceeds from the band of sheep mortgaged to the appellant upon the note herein referred to, until the sum was fully paid and that the Charles Grenade Company might turn over such moneys or proceeds to the defendant Alturas State Bank. Until the period of the alleged conversion set forth in plaintiffs' complaint the defendant Alturas State Bank had not, nor had any of the defendants herein, had any possession of said band of sheep, or of any portion thereof. It further appears that on or about the twenty-seventh day of September, 1922, the defendants Hafer and Hansen examined said band of sheep, had some conversation relative to the sale of what was called the "cross-breds" included in said band, the thoroughbreds of said band being called "coarse wools." On the twenty-seventh day of September the defendant Hafer telegraphed to the plaintiff Anna Sherlock as follows:

"Have sold seven hundred at ten dollars. Will deliver Friday. If you want come up, draw on us."

This telegram was received by the plaintiff Anna Sherlock on the 28th, who thereupon immediately replied as follows:

"Cannot accept offer ten dollars for seven hundred sheep. Must sell all. Please do not deliver sheep. Letter. Walter and Anna Sherlock."

This telegram was received by the defendant Hafer on the twenty-eighth day of September, 1922, and the contents thereof communicated to the defendant Hansen on the same day. Notwithstanding the receipt of this telegram, the defendant Hafer proceeded to sell 617 head of sheep to the

defendant Hansen, and the said defendant Hansen received and paid therefor the sum mentioned on the thirtieth day of September, 1922. It thus appears that the defendants had knowledge of the direction of the said plaintiff Anna Sherlock, the owner of said sheep, not to consummate the proposed sale, before there had been any delivery thereof and, also, before any portion of the purchase price had been paid. Under this state of facts the appellant claims that the plaintiffs had given the defendant Hafer a prior authorization to sell said sheep. We do not find any written authority to that effect, but we do find the following correspondence between the parties relative to the sale of the entire band of sheep. The first letter is by the defendant, Hansen, to the plaintiff, Anna Sherlock, and, omitting address and signature, is as follows:

"I wish you would write me a line and advise me whether you think it would be advisable to sell them for a little less, if we should happen to get an offer on them? We have a lot of people that wants to buy, but have no money to buy them with, so for that reason it is going to be hard to make a sale, but I think probably I could sell them for eight and one-half, or nine dollars per head. It looks like when you say ten dollars, that it scares them all out as they think the price is too much. Please advise me as to what you think about the price?"

To which letter the plaintiff Anna Sherlock replied:

"Your letter of August 3d came last night and I hasten to answer same. Now I realize all that you say about age and coarse wool, and the asking and selling price, but I also believe that in thirty to sixty days there will be a better price. You see the South American countries have a great shortage of sheep and wool this year and with the big tariff of thirty-three cents for scoured wool, there should be a good stiff market this Fall. Walter wrote to C. E. Sherlock and told him to confer with you and I believe if you write to him, he will make an effort to get a good price for them.

"Of course, if the folks who make inquiry for them at $10.00, cannot buy because they have no money, the same condition would obtain at nine dollars, or even eight and one-half; if they have no money, they cannot buy at any price. Now, we are willing to take a net price of twenty-

five thousand dollars for the whole thing, and I believe Chas. Grenade Co. will take them at that. Of course this price is between us and if C. E. Sherlock could get a better price, I think I am entitled to a little consideration.''

There was also some oral testimony to the effect that there had been some conversation and correspondence between the defendant Hafer and the plaintiff Anna Sherlock, in which the plaintiff Anna Sherlock stated that if she could sell the whole band of sheep and the lands belonging to her and pay up all of her indebtedness, she would be glad to do so, but we have been pointed to no testimony which either directly or indirectly authorized the defendant Hafer to sell only a part of the sheep included in said band. Some argument has been made as to whether the 617 head of sheep selected from said larger band were not the pick of the band, but as no finding has been made thereon, it is needless for us to discuss that question. The letter referred to in the telegram sent to the defendant Hafer on the 28th of September, 1922, and received by him on that day, is as follows:

''We received your telegram last night, and after thinking it over know that you would agree with us that if we could not sell all the sheep, that Grenade would not run the ones that are left, so we would not know what to do with them. Then, too, the residue would be deemed culls and bring only the price of culls. Now we must try and get a sale of everything, so that all creditors will be taken care of. That is only justice. I had word from Andrew Leonard, asking if we would sell six hundred. Of course we would not consider such a sale. As soon as a proper sale can be made I will go up there and help to settle things the best I can. . . . ''

The remainder of the letter has no bearing upon the question.

Upon the trial of the case the defendant, Hafer, upon the subject of his authority to sell, testified as follows:

''Q. By the Court: Mr. Hafer, at the time you sold these sheep, did you sell them as agent of Mrs. Sherlock, or did you sell them under the authority of the mortgage?

''A. I sold them under the authority of the mortgage, to satisfy the mortgage.

"Q. By the Court: Mr. Hafer, did you authorize Mr. Hansen to take them by virtue of the mortgage?

"A. Yes, sir."                      ,

It was stipulated by counsel during the course of the trial that the sale of said sheep was not made in the manner provided by law, that the notices required to be given were not given and that the proceedings provided to be had and taken upon a sale, either of pledged property or foreclosure sale, were not taken and had. There does appear in the transcript some testimony on the part of the defendant Hansen that the plaintiff Anna Sherlock and himself did discuss the question of a private sale. His testimony is as follows:

"A. I said that if we had to foreclose this mortgage under the law the cost would be so much that if we put the sheep up at a sheriff's sale, they would bring nothing like what they would at a private sale and the best plan was to make a private sale of them if possible.

"Q. What, if anything, did she reply to this suggestion on your part?

"A. She said, 'that is the only way.' She said, 'Under no consideration whatever do I want this mortgage foreclosed. Under no consideration whatever.' "

It also appears that in one of the letters written by the plaintiff Anna Sherlock to this witness that she used the following expression: ·

"Do the best you can about the sheep but do not be in too big a hurry. I am sure we will get a better price later."

We do not need to discuss the cases cited by appellant which hold that a mortgagor of chattels may either by the terms of the mortgage or by subsequent authority authorize a mortgagee, or its agent, to take possession and sell personal property other than as provided by law upon the ordinary foreclosure of a mortgage, or the sale of personal property, for the simple reason that the provision of the mortgage, which we have hereinabove set forth, does not authorize any such procedure, nor is there any provision in the mortgage by which any such authority is given, nor do we find anything in the testimony in the transcript different from that which we have set forth herein, save and except the alleged testimony of the plaintiff Anna Sherlock that she had never authorized any sale of a portion of said band of sheep, and

that immediately upon being advised of the sale about to be made of 617 head thereof, she telegraphed and wrote as hereinbefore set forth. [1] The law is well settled that a power of sale, if given in a chattel mortgage, must be exercised in accordance with the provisions thereof. (*Henderson* v. *Fisher,* 38 Cal. App. 270 [176 Pac. 63].) This was a case in which this court said: ''The failure to sell in accordance with the manner provided by law rendered the sale void.'' In this particular case it was found by the court that the property was sold for less than its value, and a like judgment was entered therein with the judgment entered in the instant case, to wit: ''Additional credit directed to be entered on the indebtedness owed by the mortgagor.'' See, also, *Blodgett* v. *Rheinschild,* 56 Cal. App. 728 [206 Pac. 674]; *Bendel* v. *Crystal Ice Co.,* 82 Cal. 199 [22 Pac. 1112]; *Parke* v. *Frank,* 75 Cal. 364 [17 Pac. 427]; *Peet* v. *People's Trust etc. Bank,* 56 Cal. App. 46 [204 Pac. 413]. Other cases might be cited but these cases sufficiently establish the rule which we have just set forth, to wit: that the sale must be as provided by law, unless expressly otherwise directed by the mortgagor, either in the mortgage or by some subsequent manner of authorization. [2] We think the facts disclosed by the record in this case, and which we have hereinbefore set forth, amply supports the finding of the trial court that the owner of the band of sheep in question had given no authorization to the defendant Alturas State Bank, the mortgagee, or its agent and cashier, Hafer, to make sale of a part of said sheep, whether the pick thereof or otherwise, and that the defendant Hansen had knowledge of the telegraphic protest of said plaintiff against the sale of a portion of said sheep. No point is made by counsel on either side that the number of sheep sold and delivered does not comply with the number mentioned in the telegram sent by the defendant Hafer and, therefore, we do not consider the discrepancy in determining this case.

[3] After the alleged sale had been made by the defendant Hafer to the defendant Hansen, the defendant Hafer wrote to the plaintiff Mrs. Anna Sherlock and inclosed with his letter a deposit slip in the following words and figures:

"Alturas State Bank

Deposited by Mrs. A. D. Sherlock, Alturas, Calif., Sept. 30, 1922.

Checks as follows ...........................$6170.00
Less on Dannhauser note ......................  550.00
                                              _____
                                              $5620.00
Less paid note ..............................  5500.00
                                              _____
                                              $ 120.00"

Thereupon, and before beginning of this action, the plaintiff Anna Sherlock went to Alturas, interviewed all of defendants, demanded the return of the sheep, which were not returned, and also in the month of November withdrew from the defendant bank the sum of $131. It is upon the fact of the withdrawal of the said sum of $131 that the appellants base their contention that the proceedings relative to the sale of said sheep were ratified by the owner, Anna Sherlock, citing in support thereof section 1589 of the Civil Code, which reads: "A voluntary acceptance of the benefits of a transaction is equivalent to a consent of all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." The trial court found against the contentions of the appellants on the subject of ratification and it is argued that this finding is against the evidence. It may be premised that ratification is not tendered as an issue in the pleadings, but does appear to have been tendered by the testimony and found by the court. Appellants have set forth a portion of the testimony upon which this contention is based, but a review of the whole testimony shows that the trial court correctly determined this question. The testimony of the plaintiff upon this question, on cross-examination, is as follows:

"Q. Now with this letter in which Mr. Hafer said he was depositing $120.00 on your checking account you got a copy of this deposit slip, is that correct? A. Yes. Q. What did you do with that $120.00, if anything? Do you understand the question? A. Yes, I understand the question. Mr. White: I submit that there is no showing that she got $120.00, or if she did anything with it. The Court: Let her answer if she knows. A. I don't know now. Q. Did you draw it out of the bank? A. I drew some money out of the

bank. Q. Didn't you draw all that was on your checking account out of the bank about the 3rd day of November? A. I drew out $131.00 on the 6th and 7th of November. Q. Was there anything left in your checking account after you drew the money out? A. There should have been. Q. Was there? A. I don't know. Q. Mrs. Sherlock, didn't you draw every cent out of your checking account on the 3rd day of November, 1922, that the bank-books showed was there? A. I drew out $131.00. Q. I don't think you understand the question. Mr. White: I submit that the bank-books are the best evidence of what the bank-books showed. Q. Didn't you draw on the 3rd day of November, 1922, every cent that you had in your bank account, or that you had power to draw at that time? A. No, sir. Q. How much money did you think you had power to draw? A. I thought I had some more money there. Q. How much more money did you think you had? A. $165.00. Q. Did you ask the bank officials how much you could draw? A. I asked Mr. Cummings, yes, sir. Q. You asked him how much you could draw, and he told you $131.00, didn't he, Mrs. Sherlock? A. I do not know what he told me, but I drew $131. Q. Let me get that straight, didn't you at that time draw every cent that they told you you had power to draw? A. I just told you I did not draw all I thought I had the right to draw. Q. Didn't you on the 3rd day of November draw every cent you were told you had the power to draw at that time? A. I have answered that.''

The testimony of the officers of the bank show only that Mrs. Sherlock was informed as to the amount she could draw out. It appears that the bank was about to be closed and was closed shortly afterward and that Mrs. Sherlock went to the bank to secure some funds. We think the testimony falls very short of complying with the section of the code in relation to ratification, in that it fails to show a number of material elements, and does not show that the plaintiff was aware that she was withdrawing all the money she had on deposit, but that she was under the impression she had considerable more.

[4] Upon oral argument of this cause it was made to appear that at the time of the trial appellants sought to secure admission in evidence of a letter in which the plaintiff Anna

Sherlock had written that if she could secure a certain sum for the entire band of sheep owned by her and, also, for the lands and premises owned by her in Modoc County, she would be willing to accept the figure therein named, and that the land was worth a certain sum and, therefore, that the plaintiff was willing to sell the band of sheep for a sum per head not greater than that obtained for the 617 head of sheep delivered by the defendant Hafer to the defendant Hansen. The admission of this testimony was sought in order to offset the testimony of the plaintiff as to the value of the sheep per head.   While, for such purposes, we think the testimony was admissible, yet it is true that an offer to sell is not evidence, in and of itself, of the market value of the thing offered to be sold, especially, when coupled with conditions as appear in this case, yet even though it be held that the ruling out of such testimony was error, it cannot be considered as prejudicial, because the record discloses ample testimony to support the findings of the court as to the value of the sheep delivered by the defendant Hafer to the defendant Hansen as hereinbefore set forth.

We think the judgment of the trial court should be affirmed, and it is so ordered.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 25, 1925, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 24, 1925.

All the Justices present concurred.