[Civ. No. 7261. First Appellate District, Division Two.—June 12, 1930.]

JOHN N. HELMICK, Appellant, v. ORVILLE HOLADAY et al., Respondents.

John N. Helmick, *in pro. per.*, and Robert E. Austin for Appellant.

Albert E. Dunning, Frank W. Walden and C. R. Ogg, for Respondents.

BURROUGHS, J., *pro tem.*—This is an action to recover the sum of $3,320.44 and interest, according to terms of a certain promissory note. Judgment was entered in favor of the defendants and the plaintiff appeals.

Appellant contends that certain findings of fact are not sustained by the evidence and the judgment should therefore be reversed.

The evidence discloses that on December 5, 1924, the defendant Anna M. Almony was the owner of a lease of an apartment house in the city of Los Angeles, known as the Auburn Apartments and that she owned all of the furniture used in connection therewith; that on said day she sold to her co-defendants, Orville Holaday and Nellie Holaday, the lease and the furniture above mentioned for the sum of $9,250; the Holadays paid $4,250 of said sum by executing and delivering to said Anna M. Almony a promissory note payable in monthly installments of $100 or more, commencing on January 15, 1925, and continuing until the balance was paid. The Holadays also executed a chattel mortgage on said property, including the lease, to secure the payment of the note. The mortgage provides that upon failure to pay any installment of the note according to its terms "then the said mortgagee may take possession of said property using all necessary force so to do, and may immediately proceed to sell the same in the manner provided by law, and from the proceeds pay the whole amount of said note and all costs of sale including counsel fees in the sum of ten per cent, upon the amount due . . . all the said costs and attorneys fees being hereby secured by the property described herein." On the same day Anna M. Almony sold said note to the plaintiff and assigned to him the chattel

mortgage securing the same. On the following day Anna Almony and her husband signed a letter addressed to the plaintiff in which, among other things, they guaranteed their title to the note and mortgage above referred to and also guaranteed the payment of said note. The transaction took place in the plaintiff's office. The Holadays sold the said lease and furniture to the defendants Evalyn Byrd and W. M. Byrd, and on August 1, 1925, the Byrds signed a document addressed to this plaintiff in which it was stated that, in consideration of the plaintiff consenting to their selling said property, they guaranteed the payment of the unpaid balance on said note amounting to the sum of $3,680. The Holadays thereupon transferred title to the Byrds. The Byrds having sold the above-described property to Alice Getz, the latter also signed a letter addressed to the plaintiff in which she guaranteed the payment of the note. During all of the above transactions plaintiff was a practicing attorney and had his office and was associated with an attorney named Robert E. Austin. The amount due on the note not having been paid, and the property being in the possession of Alice Getz, the plaintiff, through his attorney, said Robert E. Austin, recovered a judgment in replevin against said Alice Getz, took possession of all of the property and sold it for $500, plaintiff being the purchaser at said sale. From this sum the plaintiff deducted $338 attorney fees and $71.25 costs. The net sum credited on the note amounted to $65.95. This action was thereafter commenced to recover the balance alleged to be due on the note.

■ It is first claimed by appellant that the finding of the trial court that the attorney's fees and costs were not secured by the chattel mortgage is not sustained by the evidence. Conceding this to be true, this is not an action to foreclose the chattel mortgage nor is there any attorney's fee provided for in the note in suit. It is, therefore, an immaterial finding. ■ The court found that on January 5, 1925, and for some time prior thereto, the plaintiff had been and was at that time acting as attorney for the defendants Almony in their various business affairs, especially in matters of law; that when the contract of guaranty above mentioned was made by them it was their custom to sign without question any papers prepared by plaintiff for their signature; that both said defendants had every confidence

in his ability and honesty and fully relied upon his advice at all times; that on said day and while plaintiff was acting as attorney for these defendants as aforesaid, the plaintiff purchased the said note from the said defendants; that at the time the plaintiff presented the contract of guaranty to said defendants and asked them to sign it, and after said defendants had read the same the defendants did not understand it and asked plaintiff to explain it to them, whereupon the plaintiff with intent to cheat and deceive said defendants, informed them that the signing of said instrument would not create any liability against them or either of them and that the signing of said instrument was a mere matter of form; that these defendants believed and relied upon said statements of plaintiff with reference to their nonliability in signing said instruments, and acting upon such belief, and relying upon the integrity and honesty of the plaintiff as their attorney aforesaid, signed said instrument in writing purporting to guarantee the payment of said promissory note; that in advising these defendants to sign said instrument in writing, the plaintiff was acting in his own interest and not that of the defendants and deliberately violated the confidence of these defendants, and fraudulently and dishonestly and with intent to cheat, deceive and defraud these defendants, secured said guarantee; that had either of the defendants not been advised by their attorney, the plaintiff herein, to sign said instrument, or had they been informed as to the legal liability they were assuming in so doing they would never have signed the same; that the defendants Almony did not receive any consideration for making the written guarantee of payment; and that they signed the guarantee believing it was necessary to complete the transaction. In support of these findings, defendant Anna M. Almony testified in substance that the plaintiff became attorney for herself and her husband, E. J. Almony, in August, 1924, in an action whereby the Almonys first obtained title to the property involved in this dispute, and was their attorney in the apartment house transaction now before the court; that he remained their attorney until December, 1925; that when they sold the lease and furniture in December, 1924, plaintiff represented them in the preparation of the papers and advised them in connection with the transaction. She further testified that,

"In the early part of January, 1925, I sold him the note and the chattel mortgage I received from the Holadays. At that time plaintiff asked me to sign a paper, and my husband and I signed it (the guarantee of the payment of the note). The guarantee was signed in plaintiff's office. I asked plaintiff what the paper was for and he told us it was a mere matter of form. That no liability would be concerned in it, and that papers like that were always signed in deals of that kind and then I signed it. If he had not made the statement that there would be no liability on my part, and that it was only a matter of form and that papers like that were always signed in such transfers, I would not have signed it. The first business I ever had with the plaintiff was this deal and selling him the note." On cross-examination she testified that "The consideration for the note and mortgage paid me by plaintiff was a home in Inglewood that he sold us and we gave him for it the note in suit valued at $4,250, a lot in San Fernando at $1,500 and an equity in another lot in Lamanda Park at $685, and $315 in cash. We looked the property over at Inglewood that he traded to us. I told him the San Fernando lot was worth about $1,500; he knew about the value of the note, but I told him it was worth $4,250. My husband was present. He heard our conversation. I do not know if he read the papers, I merely glanced at them in a casual way. At the time of signing the guarantee I also signed the note on the back. My husband also signed them. My husband signed because plaintiff asked him to. He pushed the papers toward us and asked us to sign them and we did." E. J. Almony testified that plaintiff became their attorney in August, 1924, and continued in that capacity until December, 1925, and that they had no other attorney during that time. He further testified, "We followed his advice, we had confidence and trust in him. In December, 1925, we sold him the note and chattel mortgage. Plaintiff, my wife and myself were present in plaintiff's office. He shoved the papers up to me and asked me to sign, and I asked him what are these papers for, and he said that is merely a matter of form. No liability. That is always done in a deal of this kind. I would never have signed it if I had known it was a note and that he said there was no liability and a mere matter of form. He continued to be

our attorney until December, 1925." On cross-examination the witness testified: "I talked with the plaintiff about the deal a number of times before it was consummated. I signed the note on the back because plaintiff asked me to." John N. Helmick, the plaintiff, testified that he prepared the promissory note and chattel mortgage for the Holadays and Almonys and subsequently, January 5 or 6, 1925, he purchased the note and mortgage, trading them a house for it of the value of $6,000."

There was other evidence received on behalf of plaintiff to combat the above testimony of the defendants, but it appears from the foregoing that the court's findings of fraud and deceit were based upon conflicting evidence, and, therefore, may not be disturbed by this court.

The court found that the defendants E. J. Almony and Anna M. Almony did not receive any consideration for making said guaranty; that they signed the same upon the request of plaintiff, relying upon his representations that it was necessary to do so in order to complete the transaction and that said guaranty was void. ■ The court also found that the purchase of the furniture and lease by Evalyn Byrd from Orville Holaday and Nellie Holaday, was made by one instrument; that there was no promise or agreement to pay the chattel mortgage or note thereby secured; that Evalyn Byrd and W. M. Byrd signed the written guaranty to pay the note upon the representation of plaintiff that it was necessary to have his consent to such transfer and said guarantee was without consideration; that on October 21, 1925, W. M. and Evalyn Byrd sold said furniture and assigned the lease of the apartment house to the defendant Alice Getz, who entered into possession thereof; that said Alice Getz never promised to pay the said note; that the guaranty signed by Alice Getz was represented to her by the plaintiff as necessary to make said transfer legal, and that his consent was necessary for that purpose; that relying upon said representations and not otherwise, she made and delivered said paper to plaintiff, but without any consideration. It is clear from the evidence that the plaintiff represented to the defendants E. J. and Anna M. Almony, defendants W. M. and Evalyn Byrd and defendant Alice Getz, that his consent was necessary to a transfer

of the above property, and that he said to Anna Almony and E. J. Almony that the guaranty was a mere matter of form; that no liability would be attached to it, and that papers like that were always signed in that kind of deals. Evalyn Byrd testified that when she signed the guaranty not a word was said by the plaintiff about any personal liability, and that plaintiff said the indebtedness was secured by the furnishings in the apartment house. Alice Getz testified that when she took the apartment house she did not sign any guaranty of the payment of the note and that plaintiff said it was a form of law and did not obligate her to pay anything other than it was to go on with the mortgage. There can be no question that the consent of the plaintiff was unnecessary to a sale of the furniture subject to the debt secured by the chattel mortgage. It, therefore, follows that the guaranty as to each one of the defendants above named was given without consideration and is, therefore, void.

The evidence and the findings are to the effect that after the plaintiff recovered the mortgaged property in the suit in replevin he endeavored to sell the same in the manner provided by section 2967 of the Civil Code as a "pledge" of personal property. It is provided by section 3005 of the Civil Code that a sale of property pledged must be made at public auction in the manner and upon the notice of sale of personal property under execution. Section 694 of the Code of Civil Procedure lays down the rule that the sale of property under execution must be made at auction, to the highest bidder. When it is of personal property capable of manual delivery, it must be within the view of those who attend the sale; neither the officer holding the execution nor his deputy can become a purchaser or be interested in any purchase at such sale. In the case at bar the property was sold by Mr. Austin, the agent of the plaintiff; the plaintiff became the purchaser; furthermore, the evidence discloses that the property was not within the view of the parties who attended the sale. Although the sale was not made in the course of judicial proceedings nor by a duly licensed auctioneer, nevertheless it should have been made in accordance with the statute. In *Henderson* v. *Fisher*, 38 Cal. App. 270, 272 [176 Pac. 63], it is said: "Since it appears both from the pleadings and the evidence that the mortgagee,

through his agent, conducted the sale and became a purchaser of the mortgaged property at such sale the position of appellant was analogous to the sheriff in conducting an execution sale, and hence, the effect of said sale so far as appellant is concerned would be the same as if the sheriff had bid at an execution sale. But, in the latter instance, under the decisions there can be no doubt that the sale would be, at least, voidable, if not void." In *Sherlock* v. *Alturas State Bank,* 73 Cal. App. 391, 398 [238 Pac. 816, 818], it is held: "The law is well settled that a power of sale, if given in a chattel mortgage, must be exercised in accordance with the provisions thereof. (*Henderson* v. *Fisher,* 38 Cal. App. 270 [176 Pac. 63].) This was a case in which the court said: 'The failure to sell in accordance with the manner provided by law rendered the sale void.'"

The court found and the evidence supports the finding that the mortgaged property was not present at the place of sale as required by section 694 of the Code of Civil Procedure; also that Austin, the agent of the plaintiff, acted as the auctioneer and the plaintiff became the purchaser, and as said in *Henderson* v. *Fisher, supra,* "this was analogous to the sheriff in conducting an execution sale, and, hence, the effect as to the appellant of said sale would be the same as if the sheriff had bid at an execution sale."

Under such circumstances there was no legal sale of the mortgaged property. It follows that each one of the defendants would be entitled to such credit as the property would have brought at a sale provided by law. From the evidence as a whole it is fair to presume that it would have been greatly in excess of the few dollars for which plaintiff purchased it.

Many other points are discussed in the briefs. We are of the opinion that what has already been said is controlling in this case, and it would be of no benefit to take up the remaining questions.

The judgment is affirmed.

Sturtevant, J., and Nourse, P. J., concurred.