[Civ. No. 2332. Fourth Appellate District.—September 20, 1939.]

ELMORE JAMESON COMPANY (a Corporation), Appellant, v. LESLIE SMITH et al., Defendants; T. N. MONTGOMERY, Respondent.

[Civ. No. 2341. Fourth Appellate District.—September 20, 1939.]

ELMORE JAMESON COMPANY (a Corporation), Respondent, v. LESLIE SMITH et al., Appellants.

[Civ. No. 2342. Fourth Appellate District.—September 20, 1939.]

ELMORE JAMESON COMPANY (a Corporation), Respondent, v. LESLIE SMITH et al., Appellants.

S. P. Williams for Appellant Elmore Jameson Company.

Harry W. Horton for Appellant Smith et al., and for Respondent Montgomery.

GRIFFIN, J.—The above-numbered actions were consolidated on appeal. One action, commenced July 1, 1932, was an ordinary action upon a promissory note and to foreclose a crop mortgage dated July 19, 1929, executed by Leslie Smith, mortgagor, to John J. Elmore, mortgagee, which mortgage was given as security for its payment upon all crops to be grown upon certain premises in Imperial County during the term of a certain lease held by the mortgagor from David N. Barry and George Diddock.

Plaintiff sought a restraining order and applied for the appointment of a receiver. Leslie Smith and Grace Smith, by way of answer, alleged the execution of some independent written agreement between John J. Elmore and Leslie Smith which they claimed was unfulfilled and repudiated and that by virtue thereof the mortgage "has been abandoned by the said John J. Elmore". T. N. Montgomery set up in a cross-complaint a request for an accounting and also alleged that he did on October 9, 1931, accept from Grace Smith and Leslie Smith two chattel mortgages (duly recorded, but recorded subsequent to the execution and recordation of the Elmore mortgage), upon certain crops to be grown on the same premises, believing that John J. Elmore and his assignee, Elmore Jameson Company, a corporation, had abandoned and repudiated its mortgage and alleged that Elmore Jameson Company, a corporation, assignee, was now estopped from asserting its chattel mortgage lien and claimed that his chattel mortgage was first and a superior lien upon the security. There was also an action in replevin filed by Elmore Jameson Company, a corporation, as assignee, to recover possession of the barley crop which had in the meantime been harvested by

T. N. Montgomery, mortgagee, in the subsequent chattel mortgages.

In this second action the same general defense was interposed with the additional allegation of the defendant Montgomery that he had a claim or lien for services in the harvesting of the crop.

The application for the appointment of a receiver was denied by the court but on the first day of July, 1932, the court issued a temporary restraining order to defendants, restraining them from "removing any of said crop of barley . . . or from doing anything therewith that will in anywise affect the lien of plaintiff's mortgage herein". This restraining order was dissolved July 8, 1932. On July 9, 1932, the present action in replevin was filed and after giving security in the form of a bond in the sum of $3,000, plaintiff took the crop and sold it, as it claims under the terms of the mortgage, at a price higher than the then prevailing market price. Plaintiff also left on the premises sufficient barley to pay all rental charges. The crop sold for $1621.32, which sum was held by the plaintiff. These actions were consolidated for the purpose of trial.

The trial court found that Elmore Jameson Company, a corporation, as assignee, had a crop mortgage upon all of the crops involved in the action and that it was a first and superior lien thereon and prior to the lien of the second mortgages held by Montgomery. The court also sanctioned the sale of the grain made by the Elmore Jameson Company, a corporation, and rendered judgment that it pay to Montgomery $756.08, which represented three-fourths of the reasonable value of his services in harvesting the crop and the reasonable value of the sacks which Montgomery furnished for that purpose. The balance, or one-fourth of the cost, was held to be a charge against the lessee, Leslie Smith. It also held that plaintiff was entitled to all of the proceeds of the sale of the crop, except the amount found due Montgomery as his harvesting and threshing charges set forth, and entered judgment accordingly. Defendants appealed from the judgment rendered in the consolidated actions, excepting that portion of the judgment in favor of T. N. Montgomery. Plaintiff appealed only from that part of the judgment awarding T. N. Montgomery $756.08. The separate appeals are before us solely on the judgment roll alone.

. Defendants contend that under section 2910 of the Civil Code the plaintiff's lien under its mortgage was lost or destroyed by its action in replevying the barley and then selling it without complying with section 2967 of the Civil Code, and while the barley was in its possession under the levy; that this was tantamount to a conversion and accordingly the mortgage lien was extinguished (citing *Steele* v. *Marborough Hall Corp.,* 100 Cal. App. 491, 494 [280 Pac. 380]; *Bailey* v. *Security Trust Co.,* 34 Cal. App. 348, 354 [167 Pac. 409]; *Nelson* v. *Yonge,* 73 Cal. App. 704, 710 [239 Pac. 67]).

It is further contended that plaintiff's lien was also lost because the sale was illegal, not being made after notice, as required by sections 2967, 3000, 3001, 3002, and 3005, Civil Code, citing *Metheny* v. *Davis,* 107 Cal. App. 137 [290 Pac. 91]; *Blodgett* v. *Rheinschild,* 56 Cal. App. 728, 738 [206 Pac. 674]; and that plaintiff's lien having been extinguished, defendant Montgomery was entitled to the entire value of the grain crop at the time of trial to satisfy his mortgage and "threshing lien".

John J. Elmore, in his agreement with defendant Smith, the grower, agreed to pay all harvesting and threshing charges and furnish necessary equipment therefor. Also, sufficient crops were to be released from the mortgage to pay the rental charges on the leased premises.

It must be conceded that a power of sale may be given in a chattel mortgage. (Sec. 2932, Civ. Code; *Sherlock* v. *Alturas State Bank,* 73 Cal. App. 391 [238 Pac. 816]; *Peet* v. *People's Trust & Sav. Bank,* 56 Cal. App. 46 [204 Pac. 413].) It is also settled that where a chattel mortgage by its terms gives to the mortgagee the right to take possession of the mortgaged property, upon default in payment, the prior election by the mortgagee to foreclose the mortgage does not bar an action of replevin by the mortgagee to recover possession of the property. Such remedy is ancillary and auxiliary to the foreclosure, resting upon the right of possession given by the contract. (*Ely* v. *Williams,* 6 Cal. App. 455 [92 Pac. 393]; *Flinn* v. *Ferry,* 127 Cal. 648, 652 [60 Pac. 434].)

We are mindful of the provisions of section 2967 of the Civil Code which provides that "A mortgagee of personal property, when the debt to secure which the mortgage was executed becomes due, may foreclose the mortgagor's right of

redemption by a sale of the property, made in the manner and upon the notice prescribed by the title on 'pledge', or by proceedings under the Code of Civil Procedure,'' and of the general rule that a power of sale, if given in a chattel mortgage or independent instrument, must be exercised in accordance with the provisions thereof and in the manner provided by law, and if not so exercised the sale is void, and results in the extinguishment of the mortgage lien. (*Henderson* v. *Fisher*, 38 Cal. App. 270 [176 Pac. 63]; *Helmick* v. *Holaday*, 106 Cal. App. 380, 386 [289 Pac. 224]; *Sherlock* v. *Alturas State Bank, supra,* at p. 398; *Blodgett* v. *Rheinschild, supra,* p. 738.)

The pertinent portions of the contemporaneous agreement authorizing possession and sale of the crop are as follows: ''When said crops mature, the party of the first part (Elmore) agrees to harvest and thresh the same and to bear and pay all expenses in connection therewith and furnish the necessary equipment therefor. . . . It is further understood and agreed that as each season's crops are harvested there shall be paid the rental due on said premises therefrom and commissions due for obtaining leases, the balance then remaining shall then be divided between the parties hereto; provided, however, that the party of the first part shall have the right to retain from said second party's share a sufficient amount to reimburse him in full for all moneys then owing him by the party of the first part with interest at the rate of 8 per cent per annum. . . . It is understood and agreed that the portion of the barley set apart to the party of the first part shall constitute full payment to him of services rendered in the threshing and hauling of said crop . . . the party of the first part . . . agrees that in the event of said party of the second part failing to comply with the terms hereof to be by him performed, said party (Elmore) may enter upon said premises and take full and complete possession and control thereof and farm the same.'' The chattel mortgage dated July 19, 1929, provides that the said mortgagee (Elmore) is to thresh and deliver said barley and sell the same in accordance with the agreement dated October 15, 1928, and ''as said crops mature, the mortgagor agrees to deliver possession of the same to the mortgagee for the purpose of said mortgagee harvesting, threshing and making division thereof in accordance with the terms of said contract hereinbefore men-

tioned. The mortgagor further agrees that in the event of his failure to perform any of the terms, covenants or conditions of this mortgage or of said contract, the mortgagee may take immediate possession of said crops and the premises upon which the same are growing and take the necessary steps for the caring for and growing of the same until the same have matured and then gather and harvest the same and from the share thereof to be paid to the mortgagor under the terms of said contract, deduct and withhold therefrom sufficient thereof to pay all costs of the caring for and growing of said barley, as well as any other moneys owing by the mortgagor to the mortgagee, and any and all obligations, . . . ''

The only finding of the trial court respecting the manner of sale of the barley by plaintiff under the chattel mortgage and agreement called to our attention was: ''After giving security in the form of a bond in the sum of Three thousand dollars ($3000) plaintiff Elmore Jameson Company, took said crop and sold the same at a price higher than the then prevailing market price. That plaintiff Elmore Jameson Company left on said premises sufficient barley to pay all rental charges on said premises. That the remainder of the crop sold by plaintiff consisted of 2864 sacks of barley which plaintiff sold for the total sum of One thousand six hundred thirty one dollars and twenty-two cents ($1,631.22) which sum is now held by plaintiff.''

We also find this conclusion set forth in paragraph VIII of the findings: ''That by virtue of the terms of plaintiff's mortgage and contract, said default of the defendant Leslie Smith entitled and authorized plaintiff Elmore Jameson Company to enter upon the premises upon which the crops covered by plaintiff's mortgage were growing and to care for, harvest and dispose of said crops at private sale. . . . '' It does appear from the record, however, that appellant requested that findings be made as to the actual facts shown by the evidence relative to the taking and manner of selling the property in question. However, no further or additional findings were made. The rule is well established in California that matters which are not part of the judgment roll cannot be considered on appeal unless they are embodied in some other appropriate record. (*Brown* v. *Canty*, 31 Cal. App. 183 [159 Pac. 1056].) When an appeal from a judg-

ment is heard upon the judgment roll alone, all intendments will be made in support of the judgment, and all proceedings necessary to its validity will be presumed to have been regularly taken. If error relied on to destroy such presumptions consists of matters *dehors* the record, such matters must be brought to the attention of the appellate court by bill of exceptions or other appropriate methods. (*Caruthers* v. *Hensley*, 90 Cal. 559 [27 Pac. 411].) It must be presumed in the instant case that all proceedings necessary to the validity of the sale were regularly taken. We are not disposed to hold, therefore, that the taking of the property in the replevin suit and its subsequent sale under the authority of the chattel mortgage and agreement amounted to a conversion. The authorities cited by appellants are clearly distinguishable and not applicable to the facts in the instant case.

██ In considering the merits of plaintiff's appeal from that portion of the judgment allowing defendant Montgomery's claim or lien for expenses in harvesting the crop, it will be observed that it was clearly the obligation of plaintiff under the chattel mortgage and agreement to "harvest and thresh the same and *to bear and pay ALL expenses* in connection therewith . . . and furnish the necessary equipment therefor".

It now appears that under the conflicting claim of right, Montgomery harvested, threshed and paid all expenses in connection with the crop, which inured entirely to the advantage of plaintiff. Plaintiff now contends that the court should not permit defendant Montgomery to acquire a lien or be reimbursed for this expenditure when the act of harvesting was carried on while the restraining order precluding the imposing of any lien on the crop was in effect, and that Montgomery's failure to claim his lien when the property was taken by the plaintiff under the replevin action operated as a waiver thereof. (Citing Civ. Code, sec. 2913; 16 Cal. Jur., p. 331.)

██ A mortgage foreclosure and an action for an accounting are equitable proceedings. Under the chattel mortgages of both plaintiff and defendant, Smith, the owner of the crop, was the one, by virtue of the instruments executed, who occasioned the disputed rights of all the parties, and thereby caused Montgomery to make the expenditures to preserve the · crop and do the threshing, and all this inured directly to the

benefit of the chattel mortgagee, John J. Elmore, and saved him, the chattel mortgagee, that amount of money.

The trial court, notwithstanding the restraining order which was dissolved, imposed a charge of some character for this service, upon the proceeds of the sale of the property. That court acted within its equitable jurisdiction in holding that such a charge should be imposed and properly ordered it paid from the sum remaining in the hands of the plaintiff. (*McColgan* v. *Bank of California Assn.*, 208 Cal. 329, 337 [281 Pac. 381, 65 A. L. R. 1075]; Pomeroy's Eq. Jur., vol. 3, 4th ed., sec. 1235, p. 2962; *Clatworthy* v. *Ferguson*, 72 Colo. 259 [210 Pac. 693]; *Tulare County* v. *City of Dinuba*, 205 Cal. 111 [270 Pac. 201]; *Mace* v. *Cole*, 50 N. D. 866 [198 N. W. 816, 35 A. L. R. 445].)

The court allowed defendant Montgomery a recovery of $157.58, as being the value of the sacks furnished and only $598.50, or three-fourths of the cost of harvesting, holding that the remaining one-fourth was chargeable to the defendant Leslie Smith, being the cost of the harvesting of the *rental share* of the barley. If the defendant Montgomery was entitled to any reimbursement for the harvesting and furnishing of necessary sacks, it appears to us that under the terms of the agreement and chattel mortgage, Montgomery was entitled to recover from plaintiff the full amount expended for that purpose because the contract provided: "party of the first part (Elmore) agrees to harvest and thresh the same and to bear and pay *all expenses* in connection therewith", that is, $798 for harvesting and $157.58 costs of sacks, totaling $955.58. The balance due or the amount of the deficiency judgment in favor of plaintiff and against the defendant Leslie Smith should also be increased accordingly.

The judgment of the trial court is reversed with instructions to enter judgment in accordance with the views herein expressed.

Marks, Acting P. J., concurred.